## DAVIS v. NEW YORK LIFE INS. CO.
### No. 8855.

Circuit Court of Appeals, Eighth Circuit.
March 11, 1931.

Harry L. Jacobs, of Kansas City, Mo. (I. J. Ringolsky, William G. Boatright, and Ringolsky, Boatright & Jacobs, all of Kansas City, Mo., on the brief), for appellant.

Richard S. Righter and Cyrus Crane, both of Kansas City, Mo. (George J. Mersereau and Lathrop, Crane, Reynolds, Sawyer & Merssereau, all of Kansas City, Mo., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

This suit was instituted by Mary H. Hathaway Davis, the appellant, to recover the proceeds of two insurance policies for the sum of $15,000 and $10,000, respectively, which were issued on the 6th day of April, 1923, by the New York Life Insurance Company, upon the life of Charles E. Hathaway. The appellant, who is the daughter of the insured, was named as beneficiary in the $15,000 policy, and Mamie A. Hathaway, wife of the insured, was the original beneficiary in the $10,000 policy. Hathaway paid the semiannual premium on both of these policies as the same became due and payable, until the 6th day of April, 1925. The two policies, with the exception of the number, the amount, and the name of the beneficiary originally specified, are identical in form, and each of them contains the following provisions:

"*Change of Beneficiary*—The Insured may at any time, and from time to time, change the beneficiary, provided this policy is not then assigned. Every change of beneficiary must be made by written notice to the Company at its Home Office accompanied by the Policy for indorsement of the change thereon by the Company, and unless so indorsed the change shall not take effect. After such indorsement the change shall relate back to and take effect as of the date the Insured signed said written notice of change whether the Insured be living at the time of such indorsement or. not, but without prejudice to the Company on account of any payment made by it before such indorsement. In the event of the death of any beneficiary before the Insured the interest of such beneficiary shall vest in the Insured."

"*Reinstatement*—At any time within five years after any default, upon written application by the Insured and upon presentation at the Home Office of evidence of insurability satisfactory to the Company, this Policy may be reinstated together with any indebtedness in accordance with the loan provisions of the Policy, upon payment of loan interest, and of arrears of premiums with five per cent interest thereon from their due date."

On May 19, 1925, the policies having lapsed for nonpayment of premium, Hathaway made application for reinstatement of both policies, and on the same date made the following application for change of beneficiary as to the $10,000 policy:

"May 19, 1925.

"New York Life Insurance Company,

"The Beneficiary under the accompanying policy, No. 7686316, who is to receive the proceeds thereof upon due proof of the death of the insured is hereby changed in accordance with the Change of Beneficiary Clause thereof to Mary H. Hathaway (daughter), such change to take effect only when endorsed on said policy by the company at the Home Office.

"This Policy is not now assigned.

"Charles E. Hathaway, Insured.

"A. D. Engles, Witness."

These two applications, together with the $10,000 policy and two premiums notes for the semiannual premiums on said policies, due April 6, 1925, were forwarded to the home office of the company. The application for reinstatement was made on one of the company's forms, and contained the following so-called "Self Health Certificate":

"I hereby apply for the reinstatement of the above numbered policy, and for the purpose of inducing said Company to reinstate said Policy and with the understanding that it will rely and act on what I here say, I represent to it that I am now, to the best of my knowledge and belief, in good health; that within the past twelve months I have not had any illness, nor consulted nor been treated by any physician, nor been prevented by illness or accident from continuously pursuing my customary occupation which is the same now as it was when I applied for said Policy; that no Life Insurance Company has within the past twelve months examined me either on, or in anticipation of, an application for life insurance, or for the reinstatement of life insurance, without issuing or reinstating such insurance; and that no application for insurance on my life is now pending."

On May 27, 1925, the $10,000 policy was returned to the insured, bearing the following indorsement:

"Register of Change of Beneficiary.

"Note—No change of beneficiary shall take effect unless indorsed on this policy by the Company at the Home Office. Date of Request, May 19, 1925—Beneficiary Mary H.

Hathaway, daughter. Indorsed by John C. McCall, Vice President—Leon McCall, Asst. Sec."

On August 14, 1925, the cashier of the appellee's Kansas City office returned to the insured the two premium notes marked "Void," together with a letter, of which the following is a copy:

"Re: Policies No. 7  686  316—16

Your application for reinstatement of the two above numbered policies was duly submitted to our Home Office for attention. Our Home Office now advises that the requirement submitted as evidence of insurability in connection with reinstatement of the above policies are unsatisfactory to the Company and they, therefore, must decline to reinstate the policies.

"I return to you herewith the Lien Notes that you signed, marked void.

"Very truly yours,

"L. C. Shellhorn, Cashier."

The dividends earned on the policies up to April 6, 1925, were paid to the insured in August of that year. No further premiums were paid or tendered by the insured, and on May 19, 1928, Hathaway, the insured, died. The policies in suit, together with the two premium notes, were found among insured's papers by appellant on the day of his death, and the next day she wrote to appellee asking for blank proofs of death, but there is no evidence that any blank proofs were ever furnished to her by the company.

The complaint is in two counts or causes of action, one on each policy; each count alleging the issuance of the policy, the payment of the first premium, and then, generally, that all things required to be done by the insured to keep said policies in full force and effect were done by him, and that the insured died while said policies were still rightfully in force and effect. A demurrer interposed by appellee to each count of the complaint was overruled, as was a motion to make the complaint more definite and certain. The appellee answered by way of a general denial as to each of the two causes of action, and thereafter filed an amended answer setting up as a further defense that the semiannual premium on each policy was due April 6, 1925, but that said premiums had not been paid and that no subsequent premiums had been paid and that, because of the failure to pay said premiums due April 6, 1925, the policies both lapsed and were not in effect at the time of the death of the insured. Appellant then filed a reply in the nature of a general denial to new matter set forth in the amended answer.

Upon the issues thus formed the case was tried to a jury, and at the close of the plaintiff's evidence the court sustained the appellee's demurrer to the evidence. After the court had ruled upon this demurrer to the evidence, the plaintiff made application for leave to file an amended reply, which application was denied, and judgment was entered upon the verdict returned by direction of court dismissing the plaintiff's complaint.

From the judgment so entered, the plaintiff has appealed to this court, and in her brief sets forth four separate assignments of error, the first two of which challenge the action of the court in directing a verdict for the defendant. Assignment of error No. 3 is based upon the exclusion from the evidence of a certain so-called letter because of lack of proof as to its authenticity. The exhibit, at most, tended to prove that the insurance company did grant insured's application for change of beneficiary as to the policy therein referred to, and returned the policy to him. These facts were established by other undisputed evidence; therefore, even if the ruling was erroneous, no prejudice could have resulted. By assignment of error No. 4, the appellant asserts that the trial court erred in denying her application for leave to file an amended reply. An application to amend a pleading is addressed to the sound discretion of the trial court, and when, as in this case, there is a total absence of showing of abuse of discretion, the court's action in this regard will not be reviewed by this court.

As stated above, assignments Nos. 1 and 2, are both predicated upon the action of the trial court in directing a verdict in favor of defendant, and therefore, the real question presented by the appeal is whether or not there was any substantial evidence before the court sustaining plaintiff's claim. It is the contention of appellant that the evidence discloses facts and circumstances from which the inference might fairly and reasonably be drawn that the appellee assented to the reinstatement of these policies of insurance, and that, having by its conduct justified the presumption that the policies had, in effect, been reinstated, it could not thereafter avoid its liability by the return of the premium notes, payment of earned dividends, and by notifying the insured of its refusal to reinstate the policies. The evidence discloses that, when the negotiations for the reinstatement of these policies and the change of beneficiary as to one of them began, both policies had lapsed and there was no longer any binding contract of insurance existing between the parties.

There is, however, in each of the policies a provision which, in effect, is an offer to reinstate it at any time within five years after its lapse for default in the payment of premium upon the compliance by the insured with the conditions therein specified, namely: (1) That the insured furnish evidence of insurability satisfactory to the company; (2) that he pay the premiums then in arrears.

As a compliance with these requirements, Hathaway transmitted to the appellee his written application for reinstatement of the policies which embodied the so-called "Self Health Certificate" set forth above, together with two premium lien notes to cover the arrears in premium. The evidence shows that the appellee indicated that the notes were acceptable in satisfaction of the arrears in premium, and it also shows that appellee declined to accept the evidence of insurability as satisfactory to it, and for that reason declined to reinstate the policies, and notified Hathaway of its action, at the same time returning to him the premium lien notes marked "Void," and paying him the dividends that had accrued under the policies. It is urged by appellant that the evidence shows that the appellee indicated its acceptance of the premium notes; that it retained them for nearly three months; that Hathaway was not notified that the evidence as to insurability was unsatisfactory for a like period of time; and that the application for a change of beneficiary as to one of the policies was granted after the receipt of the application for reinstatement by the appellee; and that these facts warrant a fair and reasonable inference that the policies had, in fact, been reinstated. The evidence as to appellee's acceptance of the premium notes, viewed in the light most favorable to appellant, is proof of the fact that the insured had complied with one of the requirements necessary to entitle him to reinstatement, namely, he had tendered payment of the arrears in premium. Apparently the particular branch of the insurance company's organization having charge of its finances or securities passed upon and approved the notes as one of the steps incident to the consideration of insured's application for reinstatement. There is, however, nothing in the record to warrant the inference that the approval of the premium notes in any way indicated the approval of the evidence of insurability as satisfactory to appellee. It is true the notes were retained by the company for the period of nearly three months, pending its consideration and final action upon the application for reinstatement, but, under all of the facts and circumstances in the case, this retention of the premium notes does not justify the claim that the appellee was guilty of unreasonable delay, or that its delay in acting upon the application indicated in any way the reinstatement of the policies. In the case of Brancato v. National Reserve Life Insurance Co., 35 F.(2d) 612, 614, this court had under consideration the contention that the delay on the part of an insurance company in refunding money paid as a first premium constituted an acceptance of the risk and gave validity to the insurance contract, and in the course of the opinion the following language is used: "Where insurance is in force and the right of cancellation depends upon tender back of unearned premiums, failure to make such tender becomes important. But where, as in this case, the company had rejected the application for insurance, and had so informed the applicants by letter duly received by them, an insurance contract was not created by delay in tendering back the money receipted for."

In the case under consideration here, the policies had lapsed, there were no existing contracts of insurance, and the mere delay in returning the premium notes did not tend to prove an acceptance or approval of the application for reinstatement. Equitable Life Insurance Society v. McElroy (C. C. A.) 83 F. 631; Kansas City Life Ins. Co. v. Philips, 31 Ariz. 122, 250 P. 882.

It is contended by appellant that the fact that appellee, upon application of the insured, changed the beneficiary as to one of the policies in suit is proof of the reinstatement of the policy. We cannot agree with this contention. At the time of this change of beneficiary the policies, as insurance contracts, were dead, but by their terms the insured had the right to revive them by having them reinstated at any time within five years, and there was nothing in the action of appellee in this regard to indicate its reinstatement of the policies, or which can be construed as a waiver of any of the terms or conditions of the policies incident to their reinstatement.

It is also strenuously urged by appellant that, even if the policies were not in fact reinstated, since Hathaway had made timely application for their reinstatement and had fully complied with the terms and conditions of the contract incident thereto, it was the plain duty of the company to reinstate them, and that it could not, by arbitrarily refusing to perform its duty under the contract, deny insured the valuable right accorded to him

by the express terms of the contracts. This contention is wholly without merit, for the reason that it is based upon an assumption of fact which is not warranted by the evidence. It may be conceded that Hathaway, upon complying with the terms and conditions of the policies, had an absolute right to have them reinstated, but this right did not mature unless and until Hathaway complied with the requirements of the contracts. One of these requirements is that insured shall furnish evidence of insurability satisfactory to the company, and it appears conclusively by the evidence that this condition was never complied with. It is assumed by appellant that, when insured paid the arrears in premiums and forwarded the so-called "Self Health Certificate" made out on one of the company's forms, he had fully complied with the conditions imposed upon him. The contracts say nothing about a "Self Health Certificate," but each of them does expressly require that the applicant for reinstatement shall furnish evidence of insurability satisfactory to the company, and proof of the fact that insured furnished the so-called "Self Health Certificate," in the absence of proof that it was satisfactory to the company, falls far short of showing a compliance with the terms of the contract by insured. In fact, in view of the undisputed proof that the evidence of insurability was not satisfactory to the company, the record shows affirmatively a total failure on the part of insured to meet the contract requirements as to evidence of insurability. There is nothing in the record upon which to predicate the claim that the appellee's action in refusing to accept the evidence of insurability as satisfactory to it was unreasonable or arbitrary. There is a total lack of competent evidence that Hathaway was, in fact, in good health and insurable at the time the application for reinstatement was made.

█ The record discloses that insured failed to pay or tender payment of the premium notes or any of the subsequent premiums. This fact is not only fatal to the several arguments advanced by appellant, but is, in itself, decisive of this appeal, because, even if it be conceded that the insured had done everything necessary to procure the reinstatement of the policies, and the appellee had either agreed to reinstate them, or had by its conduct estopped itself to deny their reinstatement, the failure of insured to pay the subsequent premiums would have lapsed the policies long prior to the death of insured. To meet this evident situation it is claimed by appellant that the action of appellee in returning the premium notes with the letter declining to reinstate the policies amounted to a renunciation of the contracts and refusal on the part of the appellee to carry out their terms, and that therefore it would have been futile to tender further premiums, and that insured was, by reason thereof, excused from performance on his part. While there is a rule of law to the effect that, where one party renounces a contract and positively refuses to perform, the other party may be excused from further performance, that rule has no application to the situation under discussion. Had the insured died within the period covered by the premium notes, that rule might have been applicable, because it could have been urged that the refusal to reinstate the policy and the return of the notes made it futile to make further attempt at payment of the premiums represented by the notes. But a contract of insurance is peculiar in its feature of continuation. It is based upon definite periods of time, and is in force for each period only upon compliance with its definite requirements as to the payment of premiums, and the refusal on the part of the company to accept the premium for one period should not relieve the insured of the necessity of paying or tendering payment of subsequent premiums, if the policy is to be kept in force. If, as contended by appellant, the action of the appellee in declining to reinstate these policies was wrongful or arbitrary, and was so considered by insured, several remedies were available to him. He might have brought suit in equity to compel reinstatement of the policies; he might have instituted proceedings at law for damages for breach of contract; or he might have treated the policies as still in force, leaving the question as to the validity of the company's action in refusing to reinstate them for determination when the policies, by their terms, became due and payable. There is a total lack of evidence in the record upon which to base the conclusion that the insured ever attempted to avail himself of either of these remedies. On the contrary, it might, with reason, be argued that the conduct of the insured is proof of his acceptance of appellee's action as final, and that thereafter he regarded the policies as lapsed and all of his rights thereunder as forfeited. But, regardless of this, in order for appellant to sustain her claim that insured elected to regard the policies as still in force, it was certainly incumbent upon her to prove, among other things, that insured had performed his part of the contract, namely, that he had paid or tendered the semiannual premiums as the same became due and payable. 32 Corpus Juris, p. 1264, § 462. The failure

to pay or tender payment of the amounts stipulated in the policies as semiannual premiums is, in itself, under the facts in this case, fatal to appellant's claimed right to recover in any view of the case. Thompson v. Ins. Co., 104 U. S. 252, 26 L. Ed. 765; Hartford Life Ins. Co. v. Unsell, 144 U. S. 439, 12 S. Ct. 671, 36 L. Ed. 496.

There is no substantial evidence in the record which could possibly sustain a judgment for appellant; hence the trial court properly directed a verdict in favor of appellee.

The judgment appealed from is therefore affirmed.