**BANKERS LIFE CO. v. BOWIE.**

No. 2235.

Circuit Court of Appeals, Tenth Circuit.
June 23, 1941.

Rehearing Denied Aug. 25, 1941.

780

G. Dexter Blount, of Denver, Colo. (Samuel M. January and Ronald V. Yegge, both of Denver, Colo., and J. P. Lorentzen and Dwight Brooke, both of Des Moines, Iowa, on the brief), for appellant.

Clarence L. Ireland, of Denver, Colo. (Adams, Heckman & Raso, of Grand Junction, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

On November 13, 1930, the Bankers Life Company[1] issued its policy of life insurance to Alexander Bowie. Bernice L. Bowie,[2] wife of Bowie, was named as beneficiary therein. It contained a provision for double indemnity in the event of accidental death. Bowie died November 25, 1937. The beneficiary brought this action against the Insurance Company to recover the ordinary life benefits and $10,000 additional under the double indemnity provision. The claim for the ordinary life benefits was adjusted.

Bowie failed to pay the quarterly premium due September 28, 1937. On November 1 he mailed his check covering such quarterly premium to the Insurance Company's agency at Denver, Colorado. On November 3 he executed an application for reinstatement and mailed it to the Home Office of the Insurance Company at Des Moines, Iowa.

On a former appeal, we held on the facts presented by the pleadings, and which are set forth in our former opinion, that Bowie was entitled to have the policy reinstated. See Bowie v. Bankers Life Company, 10 Cir., 105 F.2d 806. On remand, the case was tried resulting in a verdict and judgment for the beneficiary. The Insurance Company has appealed.

The proof adduced established that Bowie died in an automobile accident on the morning of November 25, 1937.

The beneficiary offered in evidence the policy; the application for reinstatement; the Insurance Company's letter of November 12, 1937, requesting a statement from Bowie's attending physician respecting his illness in August and September, 1937; a statement from Bowie's physician received by the Insurance Company, November 20, 1937; the Insurance Company's letter to Bowie dated November 24, 1937, requesting a medical examination by Dr. Edward H. Munro, received by the beneficiary after Bowie's death; a letter of the Insurance Company dated December 1, 1937, addressed to the beneficiary referring to the request contained in its letter of November 24, 1937, and stating it had been advised of Bowie's death and enclosed the check for $51.60, which Bowie had rendered in payment of the premiums. These documents were set out in the pleadings and were before the court on the former appeal and we held they constituted satisfactory evidence of insurability.

The only additional information touching on the insurability of Bowie which had come to the Insurance Company was contained in a confidential report made by the Retail Credit Company. The reinstatement application stated that Bowie used beer and whiskey, a "few drinks on social occasions." The report stated that he drank wine in his home at the evening meal, consuming one or two drinks daily; that he sometimes drank whiskey to the extent of moderate intoxication; that he "never drinks to the extent of boisterous intoxication or to the extent of being down and out and he never goes on extended sprees." It further stated that about three months prior to the report, marital differences arose between Bowie and the beneficiary, that they had separated, and that Bowie was living at a hotel in Grand Junction and the beneficiary and the children were living in the family residence. The report contained no facts seriously reflecting on Bowie's health. On the contrary, it stated that his health was good. It referred to a minor enlargement of one lower limb which did not cause him to limp or use a cane, and indicated the enlargement was not of serious moment. Obviously, the Insurance Company so regarded it. It made no reference to the enlargement during the trial and predicated its right to insist on a further medical examination of Bowie on the infected teeth and shoulder condition from which Bowie suffered in August, 1937, and their possible implications. The report was in

---

[1] Hereinafter called the Insurance Company.

[2] Hereinafter called the beneficiary.

many respects commendatory. It stated that Bowie was an able lawyer, enjoyed a remunerative practice, had an annual income of $5,000 and a net worth of $8,000, was in sound financial condition, and that his use of intoxicating liquors did not interfere with the performance of his professional duties.

At the trial the Insurance Company offered the report in evidence, not as proof of the statements therein made, but as proof of information which the Insurance Company had received justifying it in calling on Bowie for additional proof of insurability. The trial court sustained an objection to the introduction of the report.

■ While the Insurance Company had the right to obtain the report, it had no right to refuse to reinstate the policy on the basis of information thus secretly obtained.[3]

■ On receipt of the report, the Insurance Company had the right to call for additional proof of insurability respecting Bowie's use of intoxicating liquors and his marital relations, the only matters contained in the report which reflected on his insurability. Instead of calling for additional proof relative to these two matters, the Insurance Company requested an additional medical examination by Dr. Munro. We held in our former opinion that the proof of insurability from a health standpoint should have been accepted by the Insurance Company as satisfactory and there was nothing in the report which indicated that Bowie's state of health was other than had been reported to the Insurance Company.

■ The Insurance Company should have approved the application for reinstatement, unless it desired additional proof respecting Bowie's use of intoxicating liquors and his marital relations. Having elected not to request additional proof respecting those matters,[4] it was obligated to approve the application for reinstatement. Hence, had the report been received in evidence, it would have availed the Insurance Company nothing.

■ Furthermore, should it be assumed that the Insurance Company was entitled to introduce that portion of the report dealing with the leg ailment as information coming to it bearing on the issue as to whether it was entitled to call upon Bowie for additional proof of insurability with respect to his health, the offer was not so limited. The Insurance Company offered the entire report, including the prejudicial statements respecting Bowie's use of intoxicating liquors and his marital relations, which were immaterial to the issues presented and should not have gone to the jury. We think the court, for this additional reason, was justified in rejecting the tender as made. See Tappan v. Beardsley, 10 Wall. 427, 435, 19 L.Ed. 974.

■ The Insurance Company also offered in evidence notations made in its office records by its medical examiner respecting Bowie's application for reinstatement, to establish that doubt existed in the minds of the Insurance Company's executives as to the proof of insurability offered by Bowie. This proof was rejected by the trial court. Since we held in our former opinion that the proof of insurability was satisfactory with respect to Bowie's health, and since the Insurance Company did not call for additional proof respecting the two matters bearing on his insurability covered by the report, we think these records were immaterial.

■ Since Bowie during his lifetime furnished satisfactory proof of his insurability and complied with all reasonable requests made by the Insurance Company for additional proof, the Insurance Company was obligated to reinstate the policy even though Bowie's death had intervened, and such reinstatement, when made, would have related back to the time when the application for reinstatement was delivered to the Insurance Company.[5] This is especially true since death resulted from accident and not from a cause bearing on his insurability.[6]

■ The issues were submitted to the jury upon instructions not brought upon

---

[3] Haselden v. Standard Mut. Life Ass'n, 190 S.C. 1, 1 S.E.2d 924, 927; Leonard v. Prudential Insurance Co., 128 Wis. 348, 107 N.W. 646, 648, 116 Am.St.Rep. 50; Couch on Insurance, Vol. 6, p. 4940, § 1375.

[4] See Gross v. Home Life Insurance Co., 112 Pa.Super. 96, 170 A. 432, 435.

[5] Officer v. New York Life Ins. Co., 73 Colo. 495, 216 P. 253, 255, 256; Note, 105 A.L.R. p. 478 et seq. Contra, see Note, 105 A.L.R. p. 482 et seq.

[6] Prudential Insurance Co. v. Union Trust Co., 56 Ind.App. 418, 105 N.E. 505; Parker v. California State Life Ins. Co., 85 Utah 595, 40 P.2d 175; Officer v. New York Life Ins. Co., 73 Colo. 495, 216 P. 253, 256.

this record. We must, therefore, assume they were fairly submitted.

Being of the opinion the record presents no substantial error, the judgment is affirmed.