480 P.2d 122 (1970)
KANSAS CITY LIFE INSURANCE COMPANY, a Missouri corporation, Plaintiff in Error,
v.
Roberta L. JOHNSON, Defendant in Error.
Nos. 70-380. (Supreme Court No. 23676.)
Colorado Court of Appeals, Div. II.
November 17, 1970.
As Amended on Denial of Rehearing December 15, 1970.
Ireland, Stapleton, Pryor & Holmes, Robert C. Hawley, Denver, William E. Tipton, Kansas City, Mo., for plaintiff in error.
McVicker, Woodford & Myers, Frederick J. Myers, Wheat Ridge, for defendant in error.
Not Selected for Official Publication.
ENOCH, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
This is an action to recover the proceeds of a life insurance policy. Trial was to the court and from a judgment in favor of the plaintiff (Mrs. Johnson) who was the beneficiary, the defendant (Kansas City Life Insurance Company) brings this appeal.
The material facts of the case are not in dispute. Kansas City Life has its home office in Kansas City, Missouri, with an agency office in Denver, Colorado. The agent had authority to sell policies of insurance, collect premium payments, and deposit such payments to the defendant's bank account in Denver, but had no authority to draw checks on the bank account.
The insured, Vernon C. Johnson, had four insurance policies with defendant on which monthly premiums were regularly paid, and the proceeds of these policies were paid in due course after the death of Mr. Johnson. These four policies are not involved in this case. On August 16, 1963, Mr. Johnson contracted with the defendant, through its agent, for a fifth term insurance policy, which is the subject matter of *123 this action. Premiums were payable at the rate of $10.00 a month. This policy provided that if any premium was not paid on the due date or within the 31 day grace period, it "shall immediately terminate." The policy further provided that after a default in payment of any premium, the policy could be reinstated;
"* * * upon written application by the Insured to the Company at its Home Office, accompanied by evidence of insurability satisfactory to the Company and the payment of all past due premiums with interest at 6% per annum from their respective due dates."
The premiums were paid for September and October, but were not paid November 16, or December 16. The agent mailed premium notices with a return envelope prior to each monthly due date.
On December 20, Mr. Johnson went to his employer's doctor because of a skin rash. Tests were made and he was instructed to return at a later date.
On December 23, the following letter was mailed by defendant's agent to Mr. Johnson:
 Policy No. 1 662 542
 Insured Vernon C. Johnson
 Amount needed $29.72 Quarterly
Dear Mr. Johnson:
"Probably you have overlooked the fact that the grace period for the payment of this premium has expired. Even though your policy has lapsed, you may apply for reinstatement."
"Just answer all the questions on the attached application, date and sign it in the presence of a witness of legal age and return it to us with a remittance as shown above."
"Your application will be given immediate consideration. We are as anxious as you are to see your policy restored, so don't delay. Mail your application and remittance today."
 Sincerely yours,
 J. T. Allen Agency
 Conservation Department
This letter was received, but neither Mr. nor Mrs. Johnson responded to it.
On the morning of December 24, Mrs. Johnson mailed a $20.00 check to the agency without identification as to how or for what purpose the payment was to be applied. The Johnsons knew the grace period had expired on the policy in question. In the afternoon of that day, Mr. Johnson returned to the doctor and learned that he had to go to the hospital on December 25 for more extensive tests.
The $20.00 check was received by the agency on December 30 and was deposited with other receipts of the day in the agency's only bank account. The agency, having identified this payment to the then lapsed policy, wrote another letter to Mr. Johnson that same day. This letter acknowledged receipt of the $20.00 "tendered" in payment of two monthly premiums, and further said:
"However, as the period for payment of the November premium has expired, it will be necessary for you apply for reinstatement of your policy. Please complete, date, and signed the enclosed application in the presence of a witness, and return it to us. If approved, your remittance will be applied to pay premiums to January 16, 1964."
Consistent with the context of this letter, the agency office identified this deposit to the home office of defendant with the remark, "Reins. to fol.", meaning reinstatement to follow.
On January 4, 1964, the agent called Mrs. Johnson to see if she had completed the reinstatement form. She informed him that she hadn't because her husband had been to see a doctor and had been in the hospital and felt he was then uninsurable if the form were correctly filled out. Although the agent encouraged her to fill the form out and send it in anyway, this was not done. On the same day, after she discussed the matter with her husband, Mr. Johnson wrote across the reinstatement form, "Please return check, V. C. Johnson," and mailed the form to the agency. Some time *124 during the week of January 6, this request was received in the Denver office and forwarded to the home office in Kansas City, which had the sole authority to write checks.
Mr. Johnson died on January 13, 1964, of aplastic anemia. Neither of the Johnsons knew of the seriousness of the illness until a day or two before his death. The following day, January 14, the agency salesman, with telephone permission from the home office, met with Mrs. Johnson to fill out the proof of death form for the other four policies which were in force. There was some conversation about the policy in question, but nothing that could be interpreted that either party considered the policy to be in force. On January 20, 1964, the agent delivered to Mrs. Johnson two checks which had been sent from the home office, one being the proceeds of the four policies and the other, for $20.00, being the refund of the payment made on the policy in question. Both checks were accepted and cashed by plaintiff. At that time no claim was made under the policy in question. It was not until some months later that this action was initiated.
The trial court initially entered judgment for plaintiff on a finding that defendant "waived the provisions for reinstatement." Pursuant to plaintiff's motion for an amended Findings of Fact and Judgment, the court changed the Findings to read, "defendant-company waived the provisions for termination of this policy." The court relied on Reliance Life Insurance Co. v. Wolverton, 88 Colo. 353, 296 P. 793, as authority for its conclusion. We do not agree with the findings or the conclusion.
Whether or not a waiver took place is a question of fact to be determined by the trier of fact, and as such, is not generally subject to review by an appellate court. But where as here, the overwhelming weight of the evidence is contrary to the trial court's findings and there is no dispute in the evidence that is material to the determination of the case, the reviewing court is not bound by the findings of the trial court. It was undisputed that there was a lapse of the policy for failure to pay the premiums. The plaintiff and the insured knew this because the defendant notified them twice in writing and at least once by telephone. The sequence of events between the lapse and insured's death was also undisputed. From this uncontroverted evidence only the conclusion, i.e. whether or not there was a waiver, was in dispute. In such a situation, a reviewing court is not bound by the conclusion reached by the trial court.
The sole question is whether cashing plaintiff's check for the premiums in default and the retention by defendant of the tendered amount from December 30, 1963 to January 20, 1964, constituted a waiver of the default.
We agree with the rules of law adopted by the trial court as set forth in Reliance Life Insurance Co. v. Wolverton, supra, i.e., "A condition in an insurance policy that it shall be void if premiums are not paid when due may be waived." Further, that, "After the receipt and unconditional acceptance of the money it is too late to declare a forfeiture." The facts before us are quite different and do not meet the tests of these rules. The defendant declared a forfeiture in effect by its letter of December 23, 1963, which was mailed before the late premiums were mailed. The defendant's letter of that date acknowledged the tendered payment, reiterated that the policy had lapsed and instructed the insured again as to the necessary steps for reinstatement. A further distinguishing factor is that the insured requested a return of the tendered payments and plaintiff admitted no effort was made to reinstate the policy.
The defendant continued up to January 4, 1964, to encourage the insured to complete the forms necessary for reinstatement. When the defendant's agent was requested by the insured during the week of January 6, 1964, to return the check ($20.00), the request was immediately processed in a normal manner by notifying the out of state home office to draw a check for the refund. There is no evidence from which *125 one might even infer that receipt of the refund on January 20, 1964, evidenced any unusual or intentional delay on the part of the defendant. Holding the money for a reasonable time while waiting for the reinstatement application and insurability statement does not constitute a waiver of the forfeiture clause in the policy based on failure to pay the premium when due. Willis v. New York Life Insurance Co., 281 S.W. 407 (Mo.)
The defendant did not waive the default by the mere routined depositing of the late check where the defendant immediately notified the insured that the default existed and instructed the insured that reinstatement was necessary and that if the reinstatement were approved, the remittance would then be applied to the policy premiums. See, Willis v. New York Life Insurance Co., supra; John Hancock Mutual Life Insurance Co. v. Hefner, 134 N.J.Eq. 336, 35 A.2d 485; Ballard v. Beneficial Life Insurance Co., 82 Utah 1, 21 P.2d 847; Equitable Life Assurance Society of United States v. Pettid, 40 Ariz. 239, 11 P.2d 833. That conditional acceptance of a late payment does not constitute a waiver by the insurer has most recently been affirmed in Lucero v. American National Insurance Co., 153 Colo. 211, 385 P.2d 255. See, Lamar v. Aetna Life, 10 Cir., 85 F.2d 141. The holding of a promissory note by the insurer has been held not to constitute a waiver. Light v. Equitable Life Insurance Co., 101 Colo. 278, 73 P.2d 530. Also, it has been held that retention of dividends did not constitute a waiver where there was no provision in the policy for the application of dividends to cover late premium payments. Cason v. Mutual Life Insurance Co., 67 Colo. 199, 184 P. 296.
Judgment is reversed with directions to set aside the judgment and dismiss the complaint.
DWYER and PIERCE, JJ., concur.