**Carolyn S. VOLIS, Plaintiff-Appellant,**

v.

**PURITAN LIFE INSURANCE COMPANY, Defendant-Appellee.**

No. 75–1960.

United States Court of Appeals,
Tenth Circuit.

Submitted Nov. 15, 1976.

Decided Feb. 1, 1977.

Edward I. Haligman of Atler, Zall & Haligman, Denver, Colo., for plaintiff-appellant.

Arthur E. Otten, Jr., of Davis, Graham & Stubbs, Denver, Colo., for defendant-appellee.

Before BARRETT and DOYLE, Circuit Judges, and CHILSON, District Judge.*

BARRETT, Circuit Judge.

Carolyn S. Volis (Carolyn) appeals the denial of her motion for new trial following trial to the court and judgment in favor of Puritan Life Insurance Company (Puritan). This action was initially filed by Carolyn in a Colorado state district court and thereafter removed by Puritan to federal district court on the basis of diversity. The crux of the action is Carolyn's claim to proceeds by

* For the District of Colorado, sitting by designation.

reason of a life insurance policy issued on the life of her deceased husband, Peter T. Volis (Volis).

Carolyn withdrew a request for a jury trial. Upon trial, the court thus became the trier-of-fact. A somewhat detailed recital of the facts, in the light most favorable to appellee Puritan, follows.

Volis was born in Greece in 1930. He immigrated to the United States at age 18. He became a citizen of the United States, apparently while working as a fry cook in Chicago. He later worked as a chef at the Hampshire House Hotel in Denver; then moved to California where he worked as a chef; and then returned to Denver where he worked as a cook at the Oasis Drive-In where he met Carolyn, who also worked there. They were married in Denver, October 25, 1963. Volis then became the head chef at Colorado Music Hall. Volis spoke English with a Greek accent. He could understand most words spoken in English; however, his wife testified that he had difficulty reading English.

Volis decided to commence his own business to be known as the Gracious Greek Restaurant of Englewood, Colorado. In order to obtain the necessary financing from the Century Bank and Trust Company of Denver (Century), Volis, on May 31, 1972, then age 41, acquired a $100,000.00 ten-year decreasing term life insurance policy from Puritan, wherein Century was named as beneficiary. The application signed and submitted by Volis listed his residence address as 908 S. Lima Street, Aurora, Colorado, where he and his family (wife Carolyn and two children) had resided for one year. *It listed Volis' employer and business address as Colorado Music Hall, 6100 Smith Road and, significantly, it provided that all communications were to be sent to Volis at the "Business." The blocks opposite the designation of "Owner" and "Residence" were not marked for mailing purposes and the only business address listed was that of the Colorado Music Hall.*

Carolyn handled all affairs and accounts having to do with the home after Volis went into the restaurant business on his own. Volis then employed a business manager and accountant who he asked to read and explain all business matters to him, and generally to handle the books and accounts.

For some time prior to June 1, 1973, Volis had been negotiating for the sale of the Gracious Greek Restaurant property. It took more time to effect the sale than Volis had anticipated. He had informed Century when he believed that the sale would be concluded and, in reliance, Century agreed that Volis need not tender the premium due June 1, 1973. However, when the business and property had not been sold and the Puritan policy had lapsed for non-payment of the premium during the 31-day grace period, Century told Volis to reinstate the policy in order to secure its loan to him. [R., Vol. I, pp. 15, 16.] It was this concern which moved Volis to call at Century with the late premium check plus interest.

Volis sold the Gracious Greek Restaurant business about September 14, 1973, for $225,000.00, realizing a profit of about $100,000.00. Century's loan was, of course, repaid from the proceeds of sale. Century then informed Volis that he should change the beneficiary on the policy. [R., Vol. I, p. 18.]

When the annual premium fell due on June 1, 1973, Volis, as heretofore related, failed to tender payment. He received the first Premium Notice from Puritan's Home office prior thereto, addressed to him at Colorado Music Hall, 6100 Smith Road, Denver, Colorado, 80216 (the exact address listed on the application form and the *only* one designated to the home office of the insurer). Attached to this notice was a mailing change of address form with a notification that premiums not received by Puritan at its home office in Providence, Rhode Island, within the agreed 31-day grace period would render the policy void.

Volis received a second Premium Notice from Puritan (marked as such), addressed just as the first notice, notifying him of the delinquent premium in amount of $413.00, again with a change of address form attached. On July 31, 1973, Puritan wrote Volis at the Colorado Music Hall address,

with a copy marked to its Denver agent, informing him that "We regret that the policy terminated because the premium due June 1, 1973, was not received within the grace period. *The policy can be considered for reinstatement upon receipt of satisfactory evidence of insurability and payment of $414.72 covering past due premiums and interest. Please complete the enclosed form and return it with your payment by August 31, 1973.*" [R., Vol. V, p. 41, Defendant's Deposition, Exh. 6.]

Puritan and its Denver agent then notified Century of the default. Century wrote August 7, 1973, demanding that he reinstate the policy by payment of the premium and interest in view of the fact that Volis' hope to close a transaction for the sale of the Gracious Greek Restaurant had not then been fulfilled. Century did not then refer to the Statement of Health form which had previously been submitted by Puritan to Volis for execution and return in order for Puritan to consider reinstatement.

On August 15, 1973, Volis mailed a check for the total amount of the premium and accrued interest to Puritan's home office which was deposited by Puritan on August 21, 1973. [R., Vol. I, p. 12.] On September 20, 1973, Puritan wrote Volis at the new address provided it (c/o Gracious Greek Restaurant, Englewood, Colorado) advising him that it had received the check in amount of $414.72 "after your policy lapsed" and that *"In order for us to further consider your policy for reinstatement, we must have the enclosed statement of health form completed and promptly returned . . ."* which letter was found in Volis' personal effects following his death. [R., Vol. I, p. 12; Vol. V, p. 41, Defendant's Deposition, Exh. 7.]

On September 27, 1973, Volis executed and submitted a Change of Beneficiary form to Puritan designating his wife beneficiary in lieu of Century following sale of the restaurant; *however, he did not enclose the statement of health form.* [R., Vol. I, p. 126.] That same date Leonard Johnson of Kent Agency, Inc., Denver, agent for Puritan, wrote to Volis at his home residence advising that he had received a copy of Puritan's letter asking Volis to complete the reinstatement health form; that he (Johnson) had been informed that Volis had paid the premium, no longer had an interest in the Gracious Greek Restaurant and that "our main concern is have you received this form and if so have you signed and returned in the envelope provided." [R., Vol. I, pp. 13, 80–86; R., Vol. V, p. 202, Plaintiff's Exh. 11.] Volis received this letter but did not respond thereto.

On November 7, 1973, Puritan wrote to Volis c/o the Gracious Greek Restaurant again advising that the Statement of Health form must be received before reinstatement may be considered. Puritan enclosed an additional health form and a business reply envelope. This letter too, was found in Volis' personal effects following his death. [R., Vol. I, p. 105; R., Vol. V, p. 203, Plaintiff's Exh. 12.] On November 13, 1973, Puritan again wrote to Volis at his home address enclosing a copy of its November 7th letter and requesting that Volis complete the Statement of Health form it enclosed and return it in an enclosed business reply envelope *"so that we may proceed with further consideration of reinstatement . . ."* [R., Vol. V, p. 204, Plaintiff's Exh. 13.] This letter, too, was found in Volis' personal effects. [R., Vol. I, p. 14; Vol. V, p. 41, Defendant's Deposition, Exh. 10.]

The trial court was generous, in our view, in granting the plaintiff, Carolyn, the benefit of the doubt with respect to receipt by Volis of some of the above related notices and/or letters. The court found that "although the evidence suggests some problems with the forwarding of mail from the restaurant to the Volis home, it is clear that at least one of these letters was found among Volis' papers after his death with the Statement of Health forms. In addition to these notices, the agent of Puritan Life who sold the policy to Volis also sent a letter to the insured at his correct and current home address on September 27, 1973. Although this letter was not found among the Volis papers, it is assumed that

he received this notice as well." [R., Vol. V, p. 166.]

Volis suffered a heart attack and died on December 30, 1973. Puritan denied the claim submitted by Carolyn on the ground that the policy had lapsed and had not been reinstated. Puritan contended that it had not waived the reinstatement condition of receipt and approval of the Statement of Health form simply by the receipt and deposit of the late premium plus interest payment and the receipt of the change of beneficiary form. Puritan further contended that it was not otherwise estopped to deny the claim.

The policy provisions relative to Premiums, Grace and Reinstatement applicable here read as follows:

*Payment of Premiums.* All premiums are due and payable in advance at the Home Office or to an authorized agent of Puritan Life in exchange for Puritan Life's receipt signed by the President, Vice President, Treasurer, Secretary or Assistant Secretary and countersigned by the agent designated therein. Premiums may be paid annually, semi-annually, quarterly or monthly at Puritan's Life rates in effect on the Date of Issue for the method of payment requested. Change from one method of payment to another may be made as of any policy anniversary.

The policy shall not take effect until the policy has been delivered and the first premium paid as provided on the first page of the policy during the lifetime and continued insurability of the Insured. Except as otherwise provided herein, the policy shall automatically become void if any premium is not paid when due.

*Grace.* A grace of thirty-one days will be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If, however, the policy becomes a claim by death during the grace period, any overdue premium will be deducted from the proceeds.

*Non-Participation.* The policy is not entitled to share in surplus distribution.

*Reinstatement.* After nonpayment of any premium, the policy will be reinstated prior to the Date of Expiry on written application for reinstatement if evidence of insurability satisfactory to Puritan Life is furnished and premiums to date of reinstatement, with interest at the rate of 5% per annum payable annually, are paid.

Puritan submitted its refund check in amount of $414.72 payable to Carolyn S. Volis on January 14, 1974. This action followed.

The court's memorandum recited in the legal question involved is whether Puritan's action in cashing Volis' check in full payment of the premium and/or the acceptance of the change of beneficiary form constitute either a waiver of or an estoppel to deny any other condition to reinstatement of the policy, namely the completion and return by the insured of the Statement of Health form; and that also in issue is whether Puritan gave sufficient notice that the required form was a condition to reinstatement of the policy. In order to make determinations of these issues, the trial court looked to Colorado law for resolutions. The court cited: (a) *Reliance Life Ins. Co. v. Wolverton,* 88 Colo. 353, 296 P. 793 (1931) for the rule that waiver of or estoppel to deny a condition to reinstatement is a factual issue to be determined by the finder of fact, and (b) *Kansas City Life Insurance Company v. Johnson,* 480 P.2d 122 (Colo.App.1970) for the proposition that as a matter of law, an insurance company does not waive its requirements of evidence of insurability to reinstatement of a policy where it notifies the insured of the condition after accepting the late premium payment. The trial court opined that "an obvious reason for this rule is the fact that retaining the premium payment for a limited time until other conditions of reinstatement are met is mutually advantageous to the insured and the insurer in terms of expeditiously reinstating the policy as enunciated in *Crum v. Prudential Insurance Company of America,* 356 F.Supp. 1054 (N.D.Miss.1973)."

The trial court, however, found no Colorado decision dealing with the identical issues in this case. The court cited *Davis v. New York Life Ins. Co.*, 47 F.2d 1051, 1054 (8th Cir. 1931) for its holding that receipt of and processing of a change of beneficiary form by the insurer does not constitute a waiver of the terms or conditions of the policies incident to their reinstatement. Specifically, the trial court found that the instant case combines elements of the *Johnson, supra,* and *Davis, supra,* fact situations. However, inasmuch as no Colorado court had followed *Davis* and because "*other grounds* are available upon which to base a decision and cognizant of the principle that federal courts should avoid ruling on doubtful questions of state law whenever possible, *this Court declines to hold that the plaintiff has failed to establish waiver or estoppel as a matter of law.*" [R., Vol. V, p. 169.] The trial court then stated that the issue of waiver or estoppel is *"in these circumstances to be a factual question."* [R., Vol. V, p. 169.] The court carefully reviewed the *Wolverton* decision, wherein the Supreme Court of Colorado affirmed a judgment based upon the jury determination—as a factual issue—that the evidence presented established that the insurer who had received a delinquent premium payment which it held for some six weeks before denying reinstatement based upon the failure of the insured to submit the required health certificate had not waived the health certificate condition for reinstatement. The trial court relied upon the following "controlling facts" in support of its finding that Puritan had not waived the requirement of evidence of insurability in the nature of the Statement of Health form as a condition of reinstatement: (1) Before Volis applied for reinstatement of the policy Puritan sent a notice of the aforesaid requirement of evidence of insurability to an address provided by Volis; (2) Puritan retained the premium payment by cashing Volis' check and depositing the proceeds in its account; (3) Puritan accepted a change of beneficiary form from Volis; (4) Subsequent to accepting the payment and the change of beneficiary form, Puritan sent

four notices of the requirement that evidence of insurability must be provided before the policy could be reinstated; and (5) Volis received at least three of these notices and retained them in his possession until death. *The trial court thereupon specifically found that "the circumstances and conduct of the parties in the instant case were insufficient to cause a person of ordinary judgment to believe that evidence of insurability in the form of the Statement of Health form would be waived. None of the facts established in this case was inconsistent with the insurer's insistence upon that condition."*

Carolyn's motion for new trial challenged as error the court's reliance—in any manner—on *Johnson, supra,* because that decision is not binding under the doctrine of *stare decisis* inasmuch as (a) it was not selected by the committee authorized by the state legislature to designate opinions for publication authored by the Court of Appeals and (b) only those so selected are binding upon the state trial judges and to be considered as *stare decisis* for the point of law settled therein if there is no conflict with decisions of the Colorado Supreme Court, all as provided under Rule 35(f) of the Colorado Appellate Rules. In overruling the motion, the court noted that it had specifically declined to rely upon *Johnson* in that it had (a) refused to decide the controversy as a matter of law and (b) ruled that in diversity cases doubtful questions of state law should be avoided. For these reasons, the trial court found that it had decided the "litigation on factual grounds under the test set out . . . in *Reliance Life Insurance Co. v. Wolverton* . . ." [R., Vol. V., p. 167.]

On appeal, Carolyn contends that the trial court erred: (1) in its misinterpretation and misapplication of the case of *Kansas City Life Ins. Co. v. Johnson, supra,* because that decision is not binding under the doctrine of *stare decisis* and that the trial court accordingly based its decision on a doubtful question of state law; (2) in ruling that certain acts of Puritan subsequent to Puritan's unconditional acceptance of the premi-

um payment tendered by Volis can serve to retroactively make such acceptance conditional; (3) in failing to find that Puritan waived the reinstatement conditions by reason of its retention of the delinquent premium payment plus interest for a period of nearly five (5) months, that is, August 21, 1973 to January 14, 1974, and in ruling that such retention was mutually advantageous to Volis and Puritan in terms of expeditiously reinstating the policy, (4) in concluding, inferentially, that certain notices mailed by Puritan to Volis subsequent to Puritan's unconditional acceptance of the premium payment were in fact received by Volis, and (5) in awarding Puritan judgment in light of its failure to sustain its burden of proving Volis' forfeiture of the insurance policy by clear and convincing evidence.

## I.

■ We commence our review with the recital of a few basic rules which control on appeal. Local law must govern federal diversity suits. *Pound v. Insurance Company of North America*, 439 F.2d 1059 (10th Cir. 1971). Findings of a trial court will not be disturbed on appeal unless they are clearly erroneous. Fed.Rules Civ.Proc., Rule 52, 28 U.S.C.A.; *Transwestern Pipeline Co. v. Kerr–McGee Corporation*, 492 F.2d 878 (10th Cir. 1974), *cert. dismissed*, 419 U.S. 1097, 95 S.Ct. 691, 42 L.Ed.2d 689 (1975). An appellate court is not called upon to decide whether the trial court reached the correct conclusion of law, but whether it reached a permissible conclusion in light of the evidence. *Hodgson v. Okada*, 472 F.2d 965 (10th Cir. 1973); *Kelly v. Layton*, 309 F.2d 611 (8th Cir. 1962).

■ Appellate courts cannot try a case de novo. The resolution of conflicting evidence is within the sole province of the trial court (as the trier of fact) and its findings must be given added weight when we consider the opportunity of the trial judge to hear and observe the witnesses and to judge their credibility. *United States v. 79.95 Acres of Land, etc. v. Rogers County, State of Oklahoma*, 459 F.2d 185 (10th Cir. 1972);

*Davis v. Cities Service Oil Company*, 420 F.2d 1278 (10th Cir. 1970). The views of a federal district judge who is a resident of the state where the controversy arose in a case involving interpretation of state law carry extraordinary force on appeal where there are no state decisions on point or none which provide a clear precedent. *United States v. Hunt*, 513 F.2d 129 (10th Cir. 1975); *United States v. Wyoming National Bank of Casper*, 505 F.2d 1064 (10th Cir. 1974); *Hardy Salt Company v. Southern Pacific Transportation Company*, 501 F.2d 1156 (10th Cir. 1974), *cert. denied*, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974); *Casper v. Neubert*, 489 F.2d 543 (10th Cir. 1973).

## II.

■ Carolyn contends that the district court erred in relying upon, interpreting, and applying the decision in the case of *Kansas City Life Ins. Co. v. Johnson, supra*, in that the decision, by reason of the terms of Rule 35(f) of the Colorado Appellate Rules, *supra*, is not binding under the doctrine of stare decisis. On this predicate, Carolyn argues that the trial court thus based its decision on a doubtful question of state law. We respectfully disagree.

Clearly, the trial court did not rely upon the *Johnson, supra*, decision. In unequivocal language, the court's memorandum opinion specifically declined reliance on *Johnson* as authoritative. By refusing to decide the case as a matter of law and by electing to decide it on factual grounds, the trial court adopted the tests prescribed in *Reliance Life Insurance Co. v. Wolverton, supra*.

## III.

We deem that points (2), (3), (4), and (5) may be considered in the aggregate in that they each challenge findings and/or conclusions of the trial court which require our review and disposition within the guidelines of the "clearly erroneous" rule. Fed.Rules Civ.Proc., Rule 52, *supra*.

The trial court anchored its decision to *Reliance Life Insurance Co. v. Wolverton, supra.* There, following a full evidentiary hearing and trial, the jury found that the insurance company, by retention of the past-due, delinquent premium payment tendered on Wolverton's life insurance policy in a "suspense account" for a period of six weeks, *without any action on its part, including no request that the insured execute a health certificate,* constituted a waiver by the company of the forfeiture provisions. The court held that the jury was entitled to find, as it did, that ". . . the acts and conduct of the [insurance company] were such as to cause a person of ordinary judgment to believe that a health certificate would not be required [to effect reinstatement]." In a nutshell, the Supreme Court of Colorado affirmed because there was substantial evidence in *Wolverton* that (a) the insurance company received and retained the delinquent premium payment tendered by Wolverton without any notification to Wolverton of any kind that it did not effect reinstatement of his policy and, (b) that because no health certificate was submitted by the insurance company to Wolverton [as so found by the jury, although disputed by the company], Wolverton had reasonable cause to believe that nothing further was required of him to effect reinstatement of the policy, notwithstanding the written conditions to the contrary contained in the policy.

In the present case, the trial court unequivocally stated that it followed the rules laid down in *Wolverton, supra.* Without reiterating the findings in detail, we simply observe that the trial court—as the trier-of-fact here—found that *Puritan's* acts and conduct, unlike those of *Reliance, were not* such as to cause Volis to believe that the health statement form was not required in order to effect reinstatement. We hold that the trial court's findings and conclusions are not clearly erroneous.

We are not here confronted with a problem involving the interpretation of ambiguous terms in the subject insurance policy. The language of the policy relative to the terms and conditions required of an insured to effect reinstatement of a lapsed policy are plain and clear. *United States v. Bettenhausen,* 499 F.2d 1223 (10th Cir. 1974).

■ An insurer, having received a request for reinstatement and the delinquent premium payment, has a reasonable time within which to demand proof of insurability or to return the premium money. Appleman, Insurance Law and Practice, Vol. 3A, § 2031, p. 519; *Burnham v. Bankers Life & Casualty Company,* 24 Utah 2d 277, 470 P.2d 261 (1970), appeal after remand, 26 Utah 2d 9, 484 P.2d 155 (1971); *Ryman v. American National Insurance Company,* 5 Cal.3d 620, 96 Cal.Rptr. 728, 488 P.2d 32 (1971); *Waldner v. Metropolitan Life Ins. Co.,* 149 Kan. 287, 87 P.2d 515 (1939). If the insurer acts prudently pursuant to the reinstatement terms and conditions so as to provide the insured adequate and reasonable opportunity to perform the conditions imposed for reinstatement, the general rule is that such performance is a condition precedent to reinstatement of the lapsed policy. Appleman, Insurance Law and Practice, Vol. 3A, § 2031, p. 517; 6 Couch, Insurance, § 1375, p. 4939; Anno., 162 A.L.R. 668. Under such circumstances the payment of the delinquent premium alone, as here, would not effect reinstatement of the policy, particularly where notice of the need of evidence of insurability is timely and adequately furnished. *Smith v. Pacific Mutual Life Ins. Co.,* 192 F.2d 248 (6th Cir. 1952); *Deposit Guaranty National Bank of Jackson v. Prudential Ins. Co. of America,* 195 So.2d 506 (Miss.1967); *Peters v. Colonial Life Ins. Co. of America,* 128 Pa.Super. 21, 193 A. 460 (1937); *Gould v. Equitable Life Assurance Society of the United States,* 231 N.Y. 208, 131 N.E. 892 (1921).

■ This court has held that the term "insurability" as used in a reinstatement provision of a life, health or accident policy is broader than "good health" and that the insurer is legally justified, in arriving at a decision relative to reinstatement, to consider matters other than the insured's health. *Bankers Life Company v. Bowie,* 121 F.2d 779 (10th Cir. 1941). In *Bowie* the

insured failed to submit the statement of health form as required. Following his death, his representative offered proof that the insured was in good health at the date of his death thus rendering the certificate of good health immaterial. We held that the insured's failure to furnish the required evidence of insurability, lacking any excuse or misrepresentation by the insurer, created a complete defense by the insurer against the claim by the decedent's representative and/or beneficiary. *Bankers Life Co. v. Bowie, supra. See also*: *Gressler v. New York Life Ins. Co.*, 108 Utah 173, 156 P.2d 212 (1945), modified on rehearing in other respects, 108 Utah 182, 163 P.2d 324 (1945); *Greenberg v. Continental Casualty Co.*, 24 Cal.App.2d 506, 75 P.2d 644 (1938); *Equitable Life Assurance Society of United States v. Pettid*, 40 Ariz. 239, 11 P.2d 833 (1932). *See* other like decisions set forth in 162 A.L.R. 668, pp. 669, 670; 43 Am.Jur.2d, Insurance, § 392.

█ It has sometimes been contended that the insurer's receipt of the premium is in derogation of its claim that the policy is not then (without proof of insurability in addition thereto) in force and effect, on the premise that one cannot receive a benefit from a policy which is inoperable at the time of such payment. However, the courts have held that an insurer cannot unreasonably and arbitrarily deny reinstatement where the insured has submitted the requisite payment and forms. And if reinstatement is accomplished, the insured enjoys all of the rights which had accrued under the policy prior to his default, i. e., cash surrender value, loan value, paid-up insurance, and lengthening the extended term guarantee. Anno., 167 A.L.R. 333, pp. 334–340.

█ Generally, the "entire contract" of insurance includes the attached copy of the application. Many courts have held that the insurer is not bound until it approves and accepts the application. 2 A.L.R.2d 943, 964, § 11; 43 Am.Jur.2d, Insurance, § 221, p. 282.

█ The policy provisions relative to the terms and conditions of reinstatement in

the case before us are clear and unequivocal. Absent waiver or estoppel—and they are absent here—the rule applicable in the present case is that the delinquent premium was received and held by Puritan on the condition that the proof of health statement form be executed, returned, and approved at Puritan's home office in order to effect reinstatement. 43 Am.Jur.2d, Insurance, § 1128, p. 1051.

In *Hunter v. Fireman's Fund Insurance Company*, 448 F.2d 805 (10th Cir. 1971), the requisite proof of loss form was not submitted. We stated:

> The final matter to be resolved is the effect of Dr. Hunter's noncompliance with the proof of loss requirement of the insurance policy. The policy provisions relating to the furnishing of proof of loss would appear quite clearly to make compliance therewith a condition precedent to recovery on the policy . . . The plain import of such language is that a failure to furnish proof of loss within 90 days when it was reasonably possible to so do would invalidate a claim.

448 F.2d, at 810.

█ In our view the findings and conclusions of the trial court are not clearly erroneous. Our review of the entire record does not leave us with a firm conclusion that the trial court committed a mistake. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

WE AFFIRM.

WILLIAM E. DOYLE, Circuit Judge, dissenting.

I respectfully dissent.

The basis for my disagreement with the position taken by the majority is that it is out of harmony with the governing law which is that promulgated by the Supreme Court of Colorado. The majority opinion faithfully points out the course of events which led to the refusal of the appellee insurance company to pay the proceeds in the amount of $100,000. It is true that the insured failed to pay the premium on time.

The second annual premium was due on June 1, 1973. He waited until August 15, 1973 to pay the amount of $414.72. This would have paid him up until the following June 1. Did appellee insurance company return the check and advise the insured that he was in a state of forfeiture? It did not. It deposited the check and kept the proceeds until after his death, which was December 30, 1973. Then, some two weeks later, on January 14, 1974, it attempted to return the premium to the wife of the insured, who was the named beneficiary and the present plaintiff.

Does this conduct constitute a waiver under the law of Colorado? In the opinion of this writer it does. The ceremony which the insurance company stands upon is the failure of the insured to fill out a health form. It is plain from the lapse of time that the company intended to keep the policy in force and effect pending the completion of this form. Otherwise it would have sent back his money. Furthermore, its General Agent, Mr. Johnson, met on September 17 for the purpose of the execution of a change of beneficiary form and made no comment that the policy was not then in force.

A venerable Colorado decision controls this situation. It is cited in the majority opinion but is not there considered to be significant. I refer to *Reliance Life Ins. Co. v. Wolverton*, 88 Colo. 353, 296 P. 793 (1931). The facts in *Reliance* are quite similar to the conditions which are present in our case. There, however, the condition with respect to payment of premiums stated that if the premium was not paid the policy would become void. However, the Colorado Supreme Court held that this strong provision could be waived. The Court first noted that forfeitures are not favored and said further that "courts should be liberal in construing the transaction in favor of avoiding a forfeiture." *Knickerbocker Life Insurance Co. v. Norton*, 96 U.S. 234, 24 L.Ed. 689, and *Iowa Life Ins. Co. v. Lewis*, 187 U.S. 335, 23 S.Ct. 126, 47 L.Ed. 204 (1902), together with *Knights of Maccabees v. Pelton*, 21 Colo.

App. 185, 121 P. 949 (1912). The Court added that this principle "gains renewed force from the verdict of the jury on the question submitted and found against defendant." The position of the insurance company was that Wolverton had concealed the precarious condition of his health, an issue which is not present here. The Court, however, rejected this saying that the only issue was whether there was a waiver by acceptance. The very significant language of the Colorado court is its statement that after the receipt and unconditional acceptance of the money it is too late to declare a forfeiture. On this the court said:

> After the receipt and unconditional acceptance of the money it is too late to declare a forfeiture. *Great Western Mutual Aid Ass'n v. Colmar* [7 Colo.App. 275, 43 P. 159], supra; *Beauchamp v. Retail Merchants' Ass'n Mutual Fire Ins. Co.*, 38 N.D. 483, 165 N.W. 545. As said in *Denver Life Ins. Co. v. Crane*, supra, at page 202 of 19 Colo.App., 73 P. 875, 879: " * * If there was a waiver, it was already complete, and no change of front on the part of the company could impair its effect." We are of course aware of defendant's position in the instant case, that it did not change front, but the jury must have thought otherwise, judging by its verdict.

296 P. at 795.

In our case the evidence of acceptance is much stronger than it was in *Reliance*. The money was sent August 15. Thereafter it was held until January 14 of the following year, after the insured died. The inference is inescapable from this long lapse of time that the filling out of the form was formal rather than substantial because the premium was being used by the company during this protracted period. Thus, a clear change of position on the part of the company is apparent. It is to be inferred that the insured was perhaps uncertain as to whether he would continue the policy after the sale of his restaurant, but the restaurant was not sold as quickly as everyone had expected and the lending institution, Century Bank and Trust Company of Denver, insisted that the policy be kept in force

and that was what moved the decedent to pay the annual premium. The company held this money for five weeks before it made any effort to notify the decedent that he had to fill out the form, but this notice did not refer to the policy not being in effect. Also, there was a change of beneficiary form received and apparently accepted by the defendant on October 10, 1973. From then on it was a question of the company's notifying the insured that he had to file a form, but not cancelling the policy. It waited until the insured died and until a claim was submitted before attempting this. It is then fair to say that the company played both ends against the middle, and for this reason it is not to be permitted to make an election after the man dies.

Finally, it is to be emphasized that the blessed and sacred health form which was used by Puritan in an attempt to cancel the policy would have, if completed, added nothing. It would have been a mere piece of paper.

The majority opinion relies on the Colorado Court of Appeals decision in *Kansas City Insurance Company v. Johnson*, 480 P.2d 122. However, this is a misplaced reliance because this decision of the Court of Appeals was "not selected for official publication" by the court. It is of limited or perhaps no authority. Besides that its facts are different. The main distinction between *Kansas City* and our case is that the company acted promptly in cancelling the policy after failure to pay the premium and it never changed its position on this. Thus, it could not be charged with playing hot and cold, so to speak, with the issue of waiver.

Being of the opinion then that the undisputed evidence shows that the policy was in effect as of the date of death, I must disagree with the holding that the policy was effectively cancelled.