[No. 3391.]

## KNIGHTS OF THE MACCABEES OF THE WORLD V. PELTON.

1. FRATERNAL ORDER—*Authority of Local Officers.* In collecting and remitting the dues of members the local officers of a fraternal order are the agents of the order, anything in their constitution or by-laws to the contrary, notwithstanding.

2. —— *Benefit Certificate* is a policy of insurance.

3. —— *Forfeiture* is an odious doctrine, and the courts are alert to seize hold of any circumstance which indicates an intention on the part of a fraternal order to waive a forfeiture of a member's rights.

4. —— *Waiver.* The acceptance, without objection, from a member, of his assessments for two months, waives any right which the order might have to declare a forfeiture of the policy by an innocent failure to pay in full the assessment for the previous two months, connived at and consented to by the local officers, and the facts in regard to which the association would have known by reasonable diligence.

5.  VEXATIOUS APPEAL—*Penalty.*  A fraternal order appealed from a judgment against it in favor of a beneficiary, which was manifestly just.  The appeal was taken against the advice of its counsel, and the judgment and wishes of the local officers.  The beneficiary was thus delayed, and put to a needless expense, where no just defense to the claim was possible.  The appeal was held vexatious and a penalty of ten per cent. was imposed.

*Appeal from Denver District Court.*  HON. HARRY C. RIDDLE, Judge.

Mr. D. D. AITKIN, Mr. S. S. ABBOTT and Messrs. HAINER & SMITH, for appellant.

Mr. WILLIAM YOUNG, for appellee.

CUNNINGHAM, J.

Appellee, plaintiff below, recovered judgment in the district court on a policy of life insurance issued by appellant to her deceased husband.  The only defense interposed, which we deem of sufficient importance to consider, was based upon the contention that the assured had been suspended for non-payment of dues, and thereafter had never been regularly and legally reinstated.  The facts are not seriously in conflict, and are substantially as follows:

The assured had paid the full assessments required of him for the months of September and October, 1905.  He died on November 8th of that year; the assessment for the month of November would not have been in default until December 1st. If Pelton was in arrears at all, it was for dues which he ought to have paid for the months of July and August, 1905.  For those two months it is not denied that he paid to the local Tent (the name by which the local lodge or organization is designated)

the amount which for years preceding had been exacted of him, and which he had been accustomed to pay. For reasons not necessary here to discuss, his rates seem to have been increased, so that he ought to have paid $9.00, or thereabouts, for each of the months of July and August, whereas, he paid but three dollars and some cents, for each of said months. Thus, it will be seen, the question of his default is based entirely upon the difference between the amount he actually paid, and the amounts he should have paid for said months. The amounts that he actually paid for said months was all that was exacted of him by the officers of the local Tent, and these sums, as well as the sums he paid for the two following months, when he paid the full amounts claimed of him by both the local and supreme Tents, were forwarded to and retained by the head officers of the organization. If it be granted that Pelton had not paid the full dues for July and August, there is no evidence that his failure in this respect was wilful. On the contrary, his conduct in this respect appears to have been occasioned by representations made to him by the officers of the local Tent, whose advice and suggestions he adopted and acted upon in all substantial features. The September and October assessments were received by the supreme tent without objection, and the record discloses certain correspondence between Pelton and the supreme recorder or secretary, in which no hint of suspension appears, but, on the contrary, he is referred to by the title used generally to designate members of the order, and that, notwithstanding Pelton was at the time of this correspondence, if ever, in default. After Pelton's death, application

was made to the head organization, by appellee's attorney, for proof of death blanks, which were forwarded, and thereafter proof of death was regularly made and filed with said organization, without any intimation, up to that point, that Pelton was not regarded as a member in good standing.

So long as Pelton lived, no protest whatever was made by the supreme Tent to the local Tent concerning their exacting and accepting dues from him, and no offer was made by either body to return what he had paid, until after the death of Pelton had become known to the supreme officials. It is upon this state of facts, which are undisputed, that appellee bases her claim of waiver by the order, even if it be granted that her husband was in default for the months of July and August.

In order to meet the plea of waiver, appellant introduced on the trial below certain sections of its by-laws which pertain to suspension and reinstatements, and the authority of the order or the officers of the local Tents in matters of that sort. One section of these by-laws attempts to make the officers of the local Tents the agent of its members in all things, and the agent of the supreme body in nothing. Another by-law provides that the acceptance of dues by either the local or supreme Tent, after a member had been suspended, could not work a waiver of the right of the society to insist upon the previous suspension or default. If the general rules of law pertaining to agents, and the doctrine of waiver may in this manner be entirely swept aside, then foreign corporations or organizations would be permitted to transact business in this state without responsible agents of any sort, thus setting at

naught our wholesome laws regulating foreign corporations. It has been said by the supreme court of this state: "That contracts like the one in suit are life insurance policies is, in this jurisdiction, settled beyond recall."—*Woodmen v. Sloss,* 49 Colo. 177.

In collecting and forwarding dues, the local officers are the agents of the order, anything in their constitution and by-laws to the contrary notwithstanding.—*Supreme Lodge K. of H. v. Davis,* 26 Colo. 253.

Nor can the association be permitted to collect and retain assessments while its member continues to live, and repudiate their obligation thus created, after he dies.—*Pomroy v. Rocky Mountain Co.,* 9 Colo. 259.

The association knew, or by the exercise of reasonable care should have known, all the facts upon which it now predicates its defense. It is immaterial whether it had actual knowledge of these facts, so long as it possessed the means of knowledge, and such knowledge was readily accessible.— *K. of P. v. Kalinsky,* 163 U. S. 289.

The acceptance of the assessments for September and October, knowing of the default as to July and August, (if there was in fact a default) was a waiver of the right of the association to avoid the policy.—*K. of P. v. Kalinsky, supra; Denver Life Ins. Co. v. Crane,* 19 C. A. 191; *Deniher v. A. O. U. W.,* 10 Utah, 110.

This defense is predicated on an alleged forfeiture, an odious doctrine, which, to avail, must be clearly established, and "courts are alert to seize hold of any circumstance that indicates an inten-

tion. to waive a forfeiture.''—*Great Western Assn. v. Colmer,* 7 C. A. 275; *Denver Life Ins. Co. v. Crane, supra.*

If appellant could accept, without complaint, the assessments for September and October, and then, when its member had died in November, successfully plead his failure to pay the full assessments for the months of July and August, then it might have continued without liability, had Pelton lived, to thus have taken his money indefinitely. Our attention has been called to no authorities supporting so monstrous a proposition.

The record, we are pleased to note, discloses that the local Tent and the head officers of the state organization, resented the attitude of the supreme officers towards this claim. The western counsel for the organization, upon request made upon him, went into both the law and the facts applicable to this claim fully, and advised the head officers unequivocally that they could not escape liability. Among the authorities cited by Judge Hainer, the legal representative of the order, in his written report, was that of *Great Western Association v. Colmar, supra.* In his communication Judge Hainer advised the order that the decisions of Colorado could not be escaped by having the case removed to the federal court, since the federal court was in accord with the Colorado courts on the doctrine of estoppel and forfeiture. Why, in the face of the advice of the local organization, the state representative of the order for Colorado, and its western counsel, Judge Hainer, the chief counsel of this society should have forced appellee to go into court and for six years contend for what was obviously her right,

to keep her out of the money to which she was entitled, and, doubtless, compelling her to sacrifice a substantial portion of it in order to meet the legitimate expenses incidental to litigation of this sort, is not clear.

In view of certain representations made in the petition for a rehearing, the truth of which we have no disposition whatever to dispute or doubt, the original opinion filed in this case will be withdrawn, and this opinion, omitting certain criticisms which, under the record then before us, seemed just and deserving, substituted.

As was said in *Florence O. & R. Co. v. First National Bank,* 38 Colo. 120-2, "We can reach no other conclusion than that appellant has abused its right or privilege of appeal, has needlessly consumed the time of this court with a question previously settled in this jurisdiction, and vexatiously delayed and harrassed appellee in the collection of a debt against which no just defense was possible, for which an appellate court, in administering justice, should impose the penalty. *Rohrig v. Pearson,* 15 Colo. 127, is authority for the power of appellate courts to impose a penalty for frivolous delays."

The judgment of the trial court will be affirmed, and a penalty of ten per cent of the amount of the judgment imposed, because of the vexatious and indefensible appeal that has been prosecuted.

*Affirmed.*

WALLING, Judge, not participating.

Decided January 8, A. D. 1912. Rehearing denied March 11, A. D. 1912.