## No. 12,615.

RELIANCE LIFE INSURANCE COMPANY *v.* WOLVERTON.
(296 Pac. 793)

Decided February 16, 1931.   Rehearing denied March 16, 1931.

Mr. MILNOR E. GLEAVES, for plaintiff in error.

Mr. CHARLES H. BEELER, Mr. FREDERICK SASS, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

BERNEICE Wolverton sued Reliance Life Insurance Company on a life insurance policy issued by the company to Golden G. Wolverton. Plaintiff is his widow and the sole beneficiary named in the policy. The cause was tried before a jury; verdict and judgment were for plaintiff; the defendant insurance company brings the matter to this court to review the judgment. We refer to Berneice Wolverton as plaintiff, and the insurance company as defendant, as aligned in the trial court.

The insurance policy was for $3,000, payment of which the company resisted on the ground that an insurance premium due July 11, 1927, was not paid when due nor before the end of the period of grace as provided in the policy, and that by reason thereof the policy ceased and became void on or about the 12th day of August, 1927. Plaintiff's amended replication admits that the premium was not paid or tendered before November 12, 1927, but avers that the company accepted the premium and waived payment when due. The company contends that the acceptance was conditioned on Wolverton's furnishing a health certificate, but plaintiff contends that the acceptance was unconditional. This is the only substantial point disputed. After the verdict, defendant filed a motion for a new trial, which was denied. In determining the motion, the district court gave the following summary of the evidence:

"The evidence in this case shows that prior to July 12th, 1927, a policy of life insurance had been issued by the defendant Company to plaintiff's husband, Golden G. Wolverton, in which the plaintiff was named as beneficiary. On that date an annual premium became due which was not paid then, nor within the period of grace provided, so that the policy became subject to cancellation.

"Thereafter numerous letters relative thereto were written by the defendant's Manager in Denver, H. E. McCrimmon, to plaintiff's husband, but the premium re-

mained unpaid until November 11th, 1927, when the face amount thereof was sent by plaintiff to defendant's office in Denver in the form of a check for $56.64. At that time plaintiff's husband was in a hospital in Denver, recovering from an operation for appendicitis. This check was received by defendant's Manager in Denver, cashed, and the proceeds retained by defendant until December 21st, 1927, when according to the statement of defendant's counsel, the defendant learned of the illness of the insured, and sent back to plaintiff a check for $56.64, and check of plaintiff (uncashed) for 95 cents, which in the meantime had been requested by defendant to pay interest on overdue premium. These two checks were refused by plaintiff, on the claim that payment of premium had been ''accepted'' by defendant, and the two checks were finally returned to defendant's Manager in Denver by plaintiff's attorney. The matter then remained in this situation until the death of plaintiff's husband some months later, when plaintiff made demand for the payment of the policy, which was refused by defendant and this suit was brought for the recovery thereof. None of the foregoing facts are disputed.

''Defendant's Manager, H. E. McCrimmon, testified that on receipt of the check for $56.64, November 12th, 1927, the check was cashed and the money retained, but that he personally wrote a letter to plaintiff stating that a medical certificate was also necessary, and that interest in the amount of 95 cents was also due. A carbon copy of this letter was introduced in evidence; but it is to be noted that the testimony of this witness shows that this letter was not written in the usual course prevailing in the office, in that it was not dictated to the stenographer and sent out in the ordinary way, but the witness wrote it personally on the typewriter. This witness further stated that a health certificate was sent with this letter, but the carbon copy of the letter shows no notation of such enclosure.

''The plaintiff denied the receipt of such a letter, and

stated that soon after the check was sent to the company, a letter was received from the company simply acknowledging the payment of the premium and asking for 95 cents interest.''

We supplement the above statement of the trial court with further facts elicited from the testimony of Dr. W. C. Keller, a witness for the defendant: This witness testified that he had been acting as examining physician for the defendant for fifteen years and possibly longer, and still represented the defendant company in that capacity. The policy, which was issued on July 12, 1926, shows that this physician examined Wolverton on his original application for insurance, and the doctor testified in detail as to the subsequent condition of the health of the insured in January, 1927, and in October, 1927, Wolverton having called on Dr. Keller for medical services and advice before the insured's operation for appendicitis. The doctor advised an operation.

All errors assigned and argued relate, directly or indirectly, to the question of waiver.

1. A condition in an insurance policy that it shall be void if premiums are not paid when due may be waived. *Knickerbocker Life Ins. Co. v. Norton,* 96 U. S. 234, 24 L. Ed. 689; *Grigsby v. Russell,* 222 U. S. 149, 56 L. Ed. 133; *Iowa Life Ins. Co. v. Lewis,* 187 U. S. 335, 47 L. Ed. 204; *New York Life Ins. Co. v. Dumler,* 282 Fed. 969; *Fraternal Aid Union v. Murray,* 81 Colo. 236, 254 Pac. 997; *Lagrow v. Head Camp W. O. W.,* 75 Colo. 466, 226 Pac. 1086; *Capitol Livestock Ins. Co. v. Campion,* 71 Colo. 156, 204 Pac. 604; *Knights of Maccabees v. Pelton,* 21 Colo. App. 185, 121 Pac. 949; *Denver Life Ins. Co. v. Crane,* 19 Colo. App. 191, 73 Pac. 875; *Great Western Mutual Aid Ass'n v. Colmar,* 7 Colo. App. 275, 43 Pac. 159; *Darby v. Northwestern Mutual Life Ins. Co.* (Mo.), 264 S. W. 372.

As said in *Grigsby v. Russell, supra,* at page 155 of the opinion, ''A condition in a policy that it shall be void if premiums are not paid when due, means only that

it shall be voidable at the option of the company." And as stated in *Iowa Life Ins. Co. v. Lewis, supra,* at page 348 of that reported case, "A forfeiture, of course, may be waived, for the obvious reason expressed in *Insurance Co. v. Norton,* 96 U. S. 235, 'a party always has the option to waive a condition or stipulation made in his own favor,' and an agent can be given such power and whether it has been given or not may be proved by parol." The statement in *Lagrow v. Head Camp W. O. W., supra,* is applicable here: "A waiver by the society is established by the evidence that payments were made and accepted after the deceased was in default, and the society was aware of such defaults."

■ 2. After the receipt and unconditional acceptance of the money it is too late to declare a forfeiture. *Great Western Mutual Aid Ass'n v. Colmar, supra; Beauchamp v. Retail Merchants' Ass'n Mutual Fire Ins. Co.,* 38 N. D. 483, 165 N. W. 545. As said in *Denver Life Ins. Co. v. Crane, supra,* at page 202: "* .* * if there was a waiver, it was already complete; and no change of front on the part of the company could impair its effect." We are, of course, aware of defendant's position in the instant case, that it did not change front, but the jury must have thought otherwise, judging by its verdict.

■ 3. The court, in its instruction No. 3, submitted the question for the jury to determine as to whether the acts and conduct of the defendant were such as to cause a person of ordinary judgment to believe that a health certificate would not be required, and further instructed the jury in effect that if it found from a preponderance of the evidence that the insured so believed and acted thereon, this would amount to a waiver of a health certificate. Counsel for defendant objected to this instruction at the trial on the ground that there was no evidence of a waiver, and that the instruction left the question of waiver to the jury as a matter of law. The objection is untenable. The instruction merely left the jury to find from the evidence whether certain facts existed, with di-

rections that if such facts were found to exist, it would amount to a waiver. In other words, the jury determined the facts and the court defined the law applicable thereto, which is as it should be. There was sufficient evidence upon which to base the instruction.

■ In this court, counsel for defendant argues that instruction No. 3, as worded, is "incomprehensible," but counsel made no objection at the trial that it was ambiguous or uncertain. The language may have been susceptible of improvement, but it conveyed the idea, and if counsel regarded the wording as vulnerable for ambiguity, he should have informed the trial court in order to give it an opportunity to make the instruction clearer if it had been required. This is axiomatic.

■ 4. Forfeitures are not favored and courts should be liberal in construing the transaction in favor of avoiding a forfeiture. *Knickerbocker Life Ins. Co. v. Norton, supra; Iowa Life Ins. Co. v. Lewis, supra; Knights of Maccabees v. Pelton, supra.* The above principle gains renewed force from the verdict of the jury on the questions submitted and found against defendant.

■■ 5. Counsel for the insurer charges that Wolverton concealed the precarious condition of his health when he sent his check for the delinquent premium to the office of the insurance company, but if concealment was intended, it seems strange, when Wolverton became ill, that he should repeatedly go to the local physician for the insurance company to obtain professional services and advice. No question is properly raised involving fraud. Concealment was neither pleaded nor proven; in consequence it cannot be relied upon as a defense. An issue of fact was sharply defined as to whether the insurer's acceptance of the premium after the due date thereof was conditional on the furnishing of a health certificate. The verdict stamps the acceptance as unconditional. Counsel for defendant attacks the testimony of plaintiff as unbelievable, but the jury apparently failed to share his skepticism as to plaintiff's credibility, or his faith in

the infallibility of defendant's witnesses in all essential particulars. We must be permitted to excuse counsel as well as ourselves from jury service.

■ 6. The trial court, in overruling defendant's motion for a new trial, after stating the facts, said: "The jury evidently believed the testimony of the plaintiff; and assuming that her statement was true, this fact together with the retention of the premium by the defendant for nearly six weeks without any action on its part, would in the opinion of the Court be sufficient to constitute a waiver on the part of the defendant of any further requirements, and justify the plaintiff in believing that the policy was still in force; and the conduct on the part of the defendant was sufficient to amount to an estoppel."

We are in accord with the above statement of the trial court, in view of the verdict of the jury. Plaintiff pleaded the facts constituting estoppel, namely, the acceptance of premium after it was due, which was sufficient, although, as we have said in previous cases, it is better to plead estoppel as such. *Yellow Jacket Irrigation Dist. v. Pleasant Valley Ranch Co.,* 78 Colo. 543, 547, 243 Pac. 635; *Gillette v. Moore,* 74 Colo. 484, 223 Pac. 21.

Counsel for the insurer argue many other interesting questions on insurance law, but they are unnecessary to the determination of the present case. We find no error in the record and the judgment is right.

Judgment affirmed.

Mr. Justice Butler, Mr. Justice Moore and Mr. Justice Burke concur.

## On Rehearing.

Mr. Chief Justice Adams.

■ We fear that counsel for defendant has misinterpreted our opinion. We adopted and quoted the trial court's resume of the evidence only as a convenient method of stating the facts. If inconsistent with the rec-

ord in any material respect, certainly it should be changed. Counsel for defendant correctly points out that the evidence shows that defendant held the proceeds of the insured's check until January 11, 1928, and not until December 21, 1927, as stated by the trial court, but this merely adds twenty-one days to the time that defendant kept the money. Defendant's counsel offered to show that defendant kept this money in its "suspense account," but the trial court properly refused to admit such evidence without proof that the insured was apprised of the fact that it was so held.

The trial court attributed a statement to defendant's counsel that defendant learned of the illness of the insured on December 21, 1927, but this remark of the trial court must have been an inadvertence, as we do not find from our examination of the record either that counsel so stated or that the evidence so shows. We are glad to make the corrections as suggested, although they are not sufficiently material to change the result. The jury had all the facts before it, and were, of course, uninfluenced by the subsequent written opinion of the trial court on motion for new trial. The cause was ably and conscientiously presented by the respective attorneys and there should be no regrets beyond the inevitable consequence of any trial on conflicting evidence, that at least one party is bound to disappointment.

Petition for rehearing denied.