**William E. PIERCE and Beverly J. Pierce, Plaintiffs–Appellees and Cross–Appellants,**

v.

**CAPITOL LIFE INSURANCE COMPANY, a Colorado corporation, Defendant–Appellant and Cross–Appellee.**

**No. 88CA1159.**

Colorado Court of Appeals, Div. III.

Jan. 25, 1990.

Rehearing Denied Feb. 22, 1990.

Certiorari Dismissed May 8, 1990.

Baker & Hostetler, Bruce D. Pringle, John N. McNamara, Jr., Marjorie N. Sloan, Denver, for defendant-appellant and cross-appellee.

Opinion by Judge MARQUEZ.

Defendant, Capitol Life Insurance Company, appeals from a judgment, entered upon a jury verdict, finding that it acted in bad faith towards its insureds. We affirm.

In early December 1977, plaintiffs, William E. and Beverly J. Pierce, were in the process of setting up a business, the Vail Insurance Agency, of which they were the only employees. On or about December 16, 1977, plaintiffs became insured, up to $500,000 for each covered person, under a group medical insurance policy issued by defendant to the Vail Insurance Agency. The policy contained a provision which provided that "no agent has the authority to change this policy or to waive any of its provisions" and that no change in the policy could be valid unless approved in writing by an officer of the insurer. It further stated that the policy would "terminate automatically at the end of the [31 day] grace period following the due date of any unpaid premium."

Shortly after the policy issued, Beverly Pierce was seriously and permanently injured in an automobile accident and, accordingly, began to make claims for medical payments under the policy.

Between January of 1978 and February of 1983, payment of the monthly premium was often late, and, on at least fifteen occasions, the funds were tendered after the expiration of the 31–day grace period. Although it sent numerous letters reminding plaintiffs that the policy would terminate if payment were not received prior to the expiration of the grace period, the defendant accepted plaintiffs' late payments and paid plaintiffs' claims under the policy.

Plaintiff's testimony indicates that a premium payment, originally due March 1, 1983, was mailed to defendant on March 30, 1983, prior to the expiration of the 31–day grace period. By letter dated April 4, 1983, defendant advised plaintiff that since the premium had not been received when due,

Shelley B. Don, P.C., Shelley B. Don, Watson W. Galleher, Denver, for plaintiffs-appellees and cross-appellants.

it had no alternative but to terminate coverage as of April 1, 1983. According to defendant's agent, plaintiff's payment was received on April 6, 1983, after the expiration of the grace period. At the time of cancellation, there remained unpaid approximately $315,000 of the $500,000 of benefits.

Plaintiffs subsequently brought suit claiming, *inter alia,* that defendant breached its duty of good faith and fair dealing and committed a bad faith breach of the insurance contract. Plaintiffs sought, in addition to their general and special damages, an award of punitive damages.

The jury returned both a general verdict in favor of plaintiffs for $25,000 compensatory damages as well as a special verdict finding that defendant had acted in bad faith and with malice or a wanton and reckless disregard for the rights and feelings of plaintiffs. It therefore awarded plaintiffs an additional $400,000 in exemplary damages. This appeal and cross-appeal followed.

## I.

### A.

■ We reject defendant's challenge to the trial court's subject matter jurisdiction.

Relying on *Kelley v. Sears, Roebuck & Co.,* 882 F.2d 453 (10th Cir.1989), defendant alleges that Colorado's common law of bad faith conflicts with the civil enforcement remedies of the Employee Retirement Income Security Act, 29 U.S.C. § 1132 (1982) (ERISA), and is therefore preempted by it. We conclude, however, that ERISA is inapplicable under the circumstances of this case.

In order for a plaintiff's state law bad faith claim to be preempted, he or she must be entitled to bring an ERISA claim. *Dodd v. John Hancock Mutual Life Insurance Co.,* 688 F.Supp. 564 (E.D.Cal.1988). That is, the plaintiff must have been a "participant" or "beneficiary" of a plan. *See* 29 U.S.C. § 1132(a)(1) (1982).

A "participant" is basically defined as any employee who is or may become eligible to receive a benefit from an employee

benefit plan. 29 U.S.C. § 1002(7) (1982). The regulations promulgated by the Secretary of Labor, in effect at all relevant times, state that "[a]n individual and his or her spouse *shall not be deemed to be employees* with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse...." 29 C.F.R. § 2510.3–3(c)(1) (1989) (emphasis added). Plaintiffs therefore fall within the exclusion from the term "employee." *See Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957 (1st Cir.1989). *But see Dodd, supra.* Plaintiffs, not being "employees," are therefore not able to bring an action under ERISA as "participants." *See Peckham v. Board of Trustees,* 653 F.2d 424 (10th Cir.1981).

In addition, plaintiffs are not "beneficiaries" as defined in 29 U.S.C. § 1002(8) (1982) since they were neither designated by a "participant" nor by the terms of an "employee benefit plan." *See* 29 C.F.R. § 2510.3–3(b) (1989). Accordingly, the preemption provision in ERISA, 29 U.S.C. § 1144 (1982) is inapplicable, and the state district court was not divested from exercising jurisdiction in this case.

### B.

Defendant next assigns error in the trial court's denial of its motion for directed verdict. We find no error.

A motion for directed verdict can be granted only if the evidence, when considered in a light most favorable to the non-moving party, compels the conclusion that the minds of reasonable persons could not be in disagreement and that no evidence, or legitimate inference therefrom, has been presented upon which a jury's verdict against the moving party could be sustained. *McGlasson v. Barger,* 163 Colo. 438, 431 P.2d 778 (1967).

■ A cause of action alleging bad faith on the part of an insurance company requires a plaintiff to prove the absence of a reasonable basis for denial of policy benefits and knowledge or reckless disregard of

the absence of a reasonable basis. *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985).

Here, defendant asserts that the policy, on its face, entitled it to terminate coverage when payment was not received during the grace period and that therefore it had a reasonable basis to discontinue coverage. However, despite that policy provision, we conclude that issues concerning waiver were present, and thus, the trial court was precluded from granting a directed verdict.

■ Waiver is the intentional relinquishment of a known right or privilege and may be implied when a party engages in conduct that manifests an intent to relinquish the right or privilege, or acts inconsistently with its assertion. *Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984). Also, the question of waiver is generally one of fact. *Pastor v. San Juan School District No. 1*, 699 P.2d 418 (Colo.App. 1985).

■ The condition in an insurance contract that premiums must be paid when due may be waived. *Bolz v. Security Mutual Life Insurance Co.*, 721 P.2d 1216 (Colo. App.1986). Moreover, here, while the policy states that it will terminate "automatically" if payments are not received before the expiration of the grace period, such a clause means only that the policy is voidable at the option of the insurance company. *See Reliance Life Insurance Co. v. Wolverton*, 88 Colo. 353, 296 P. 793 (1931).

■ An instruction on waiver was provided to the jury. Given that defendant repeatedly accepted plaintiffs' late payments, there was evidence that would support a finding of waiver by defendant of its right to terminate the policy for late payment, and thus, the matter was properly submitted to the jury.

Much of defendant's argument addresses the nature of the testimony of plaintiffs' expert. It claims that the expert's testimony was "contradictory," "conflicting," and "far from unequivocal." These statements in and of themselves recognize that some of the testimony favored plaintiffs' position. The expert specifically testified that he did not think defendant acted reasonably in terminating and refusing to reinstate coverage and that such conduct was reckless. We conclude that viewing the record in a light most favorable to plaintiffs, the jury could disagree as to whether defendant had a reasonable basis for terminating coverage. Hence, the motion for directed verdict was properly denied.

## II.

■ Defendant also challenges the trial court's submission of the punitive damages claim to the jury. We reject this challenge.

·In determining whether the trial court erred in submitting the punitive damages claim to the jury, we must determine, viewing the evidence in a light most favorable to plaintiffs and drawing all reasonable inferences therefrom, whether a jury could find beyond a reasonable doubt that defendant's conduct was attended by circumstances of fraud, malice, insult, or a wanton and reckless disregard of plaintiffs' feelings. *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984).

Whether the evidence here is sufficient to warrant submission of the punitive damages issue to the jury is a question of law. *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243 (Colo.App.1988). We conclude that a jury could have found beyond a reasonable doubt that defendant's conduct was attended by a wanton and reckless disregard of plaintiffs feelings, and accordingly, the issue was properly given to the jury.

Establishment of a claim for bad faith breach of insurance contract alone is not sufficient to establish a claim for punitive damages. *Farmers Group, Inc. v. Trimble, supra.* However, there is more in this case.

Defendant accepted late payments of premiums and paid benefits from the date of injury in 1977 until March 1983. Prior to the termination of benefits, defendant had been reimbursed in large part for the benefits that had been paid to plaintiffs under a reinsurance agreement with another insurance company.

Here, evidence was presented that defendant cancelled plaintiffs' coverage at its first available opportunity after its own reinsurance had ended. Additionally, documentation in the possession of defendant regarding the period immediately before the termination was not produced, and plaintiffs' expert testified that defendant's conduct was both "reckless" and "reprehensible." From the evidence, a jury could find beyond a reasonable doubt that the defendant's conduct warranted imposition of punitive damages.

### III.

Defendant also asserts that the exemplary damage award of $400,000 is excessive as matter of law. We disagree.

The amount of an award of punitive damages is necessarily within the discretion of the fact finder. However, the reasonableness of the award is subject to judicial scrutiny on appeal. *Palmer v. A.H. Robins Co., supra.* High ratios of punitive to compensatory damages have been upheld if the record shows that the jury was properly guided by the purposes of a punitive award. And, the factors which are significant in determining the propriety of such an award are: (1) the nature of the act which caused the injury; (2) the economic status of the defendant; and (3) the deterrent effect of the award on others. *Mailloux v. Bradley,* 643 P.2d 797 (Colo. App.1982).

The record reflects that, by terminating plaintiffs' coverage, the defendant would save itself from a potential liability of $315,000 in benefits. Hence, we agree with plaintiffs that a substantial punitive award was necessary for there to be any deterrent effect.

Moreover, the jury was instructed that exemplary damages are intended to punish the defendant and to set an example to others. Furthermore, defendant stipulated that its gross assets were in the range of $2 billion with a net worth between $75 million and $175 million. The jury was therefore properly guided by the purposes of punitive damages, and its award of $400,000 is not, relative to this defendant, excessive.

### IV.

Defendant also seeks reversal on the basis that the trial court erred in instructing the jury that the defendant had a duty to apply individual benefits toward payment of an overdue premium. While defendant concedes that in individual insurance policies the law may require an insurer to apply benefits toward payment of a premium to prevent termination of coverage, it contests the applicability of this rule to group insurance. We perceive no reversible error.

The same rule has been applied in group insurance cases to prevent an insurer from escaping liability for nonpayment of premiums where the insurer had enough funds belonging to the employee to pay the overdue premium. *See Missouri State Life Insurance Co. v. Brown,* 188 Ark. 1136, 69 S.W.2d 1075 (1934); *Prudential Insurance Co. v. Gray,* 230 Ala. 1, 159 So. 265 (1934), *cert. denied,* 230 Ala. 59, 159 So. 267 (1935). Here, inasmuch as plaintiffs are husband and wife and the only parties covered under the group policy, we conclude that no error, prejudicial or otherwise, occurred in giving the challenged instruction.

### V.

Defendant's last assignment of error is that the jury instructions pertaining to actual damages were conflicting. Again, we find no error.

The parties stipulated that if the jury found in favor of plaintiffs, they were to award $25,000 in actual damages, and the jury was instructed in accordance with this stipulation.

### VI.

In view of our disposition and consonant with plaintiffs' views, we do not discuss the cross-appeal.

Judgment affirmed.

STERNBERG and PLANK, JJ., concur.