**Doris BURGESS, Plaintiff–Appellee and Cross–Appellant,**

**v.**

**MID–CENTURY INSURANCE COMPANY, Defendant–Appellant and Cross–Appellee.**

No. 91CA0002.

Colorado Court of Appeals,
Div. I.

April 23, 1992.

As Modified on Denial of Rehearing June 18, 1992.

Certiorari Denied Dec. 1, 1992.

Melat, Pressman, Ezell & Higbie, Alan Higbie, Robert J. Frank, Colorado Springs, for plaintiff-appellee and cross-appellant.

Retherford Mullen Rector & Johnson, Neil C. Bruce, Amelia L. Klemme, Colorado Springs, for defendant-appellant and cross-appellee.

Opinion by Judge TURSI.

Defendant, Mid–Century Insurance Company, appeals the judgment entered on a jury verdict in favor of plaintiff, Doris Burgess, on her breach of contract claim under the terms of Colorado's no-fault statute, on her bad faith claim, and on her claim for exemplary damages. Plaintiff cross-appeals the trial court's order reducing the damages awarded on the statutory willful and wanton claim. We affirm in part and reverse in part.

Plaintiff was injured in a car accident on August 5, 1986. She was insured under a no-fault policy issued by defendant.

Plaintiff immediately sought medical treatment and submitted claims for daily chiropractic treatments to defendant. Defendant timely paid these benefits and continued to do so after the results of an independent medical evaluation (IME) conducted by an orthopedic surgeon in September 1986 confirmed their reasonableness and necessity.

In March of 1987, defendant requested plaintiff to submit to a second IME. This physician concluded that continued chiropractic treatments were unnecessary. Consequently, defendant advised plaintiff on April 8 that it would not pay PIP benefits for any further treatments.

Plaintiff testified that because of the denial of treatment she suffered without medical attention until she sought and received treatment from an osteopathic physician in early September 1987. When his billings for two treatments were submitted to defendant, plaintiff was again advised that defendant would not pay benefits in light of its earlier denial based on the second IME. However, after plaintiff retained counsel, defendant advised that it would pay for a third IME if she made herself available.

On April 11, 1988, defendant reconsidered its previous denial and agreed to pay the osteopath's two billings. Benefits for these two bills were issued and accepted,

and defendant further authorized payment for osteopathic treatment for the following six months.

In May 1988, plaintiff submitted to a third IME with an orthopedic physician, who ultimately opined that biofeedback and muscle strengthening treatments were necessary, but that continued osteopathic treatments were not. Based on this evaluation, defendant advised plaintiff on September 12, 1988 that it would pay only for treatment recommended by the orthopedic physician.

At trial, the jury found that the defendant's late payment of benefits in the amount of $219 was willful and wanton pursuant to § 10–4–708, C.R.S. (1991 Cum. Supp.). Hence, the jury and found in plaintiff's favor on her exemplary damages claim, awarding $38,000 therefor. It also awarded compensatory damages of $50,000 to plaintiff on her claim that defendant had acted in bad faith, and awarded punitive damages thereon in the amount of $35,000. The trial court reduced the jury's exemplary damages award on the statutory claim to comport with the statutory allowance of treble the compensatory damages and awarded prejudgment interest thereon. It also assessed interest on the unpaid benefits in controversy at the statutory rate of 18% and awarded attorney fees on plaintiff's statutory claim. Finally, it assessed prejudgment interest on the bad faith punitive damage award.

## I.

Defendant first contends that the trial court erred in denying its motion for a directed verdict on plaintiff's claims that it had acted willfully and wantonly under § 10–4–708, C.R.S. (1991 Cum.Supp.) and in bad faith. It specifically contends that the evidence was insufficient as a matter of law to establish that defendant acted unreasonably in its investigation of plaintiff's claims before denying them. We disagree.

■ A motion for directed verdict can be granted only if the evidence, when considered in a light most favorable to the non-moving party, compels the conclusion that reasonable persons could not disagree and

that no evidence, or legitimate inference therefrom, has been presented upon which a jury's verdict against the moving party could be sustained. *Romero v. Denver & Rio Grande Western Ry. Co.*, 183 Colo. 32, 514 P.2d 626 (1973); *Pierce v. Capitol Life Insurance Co.*, 806 P.2d 388 (Colo.App. 1990). In the absence of such overwhelming evidence, conflicting evidence is properly submitted to the jury. *Converse v. Zinke*, 635 P.2d 882 (Colo.1981).

In this case, plaintiff claims that defendant acted willfully, wantonly, and in bad faith when it denied her claims for treatment without first investigating or considering the opinions of plaintiff and her treating doctors regarding the reasonableness and necessity of treatment.

At trial, the evidence established that the defendant initially denied plaintiff's claim for treatment based upon the results of an independent medical examination and its assumption that plaintiff and her treating doctors considered the underlying treatment to be both necessary and reasonable. Because plaintiff's expert conceded that such an assumption was reasonable, defendant maintains that there is no evidence to support plaintiff's claim that defendant conducted an unreasonable investigation. We reject this analysis.

■ An insured may recover for an insurer's bad faith breach of an insurance contract if she proves by a preponderance of the evidence that the insurer's conduct was unreasonable and that the insurer either knew that its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable. *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985); *Bucholtz v. Safeco Insurance Co.*, 773 P.2d 590 (Colo.App.1988). The reasonableness of an insurer's conduct is based upon objective standards of conduct in the insurance industry. *Travelers Insurance Co. v. Savio, supra.*

■ Although an insurer possesses wide latitude to investigate claims and to resist false or unfounded efforts to obtain insurance funds, *Travelers Insurance Co. v. Savio, supra,* bad faith conduct occurs

when an insurer intentionally denies a claim without a reasonable basis. *Brandon v. Sterling Colorado Beef Co.*, 827 P.2d 559 (Colo.App.1991). It may occur when an insurer acts unreasonably when investigating an injury justifying PIP recovery. *Williams v. Farmers Insurance Group, Inc.*, 781 P.2d 156 (Colo.App.1989), *aff'd*, 805 P.2d 419 (Colo.1991); *see* § 10–3–1104(1)(h)(IV), C.R.S. (1987 Repl.Vol. 4A) (It is an unfair or deceptive act if an insurer willfully refuses to pay claims without conducting a reasonable investigation based upon all available information).

■ Willful and wanton conduct in the context of § 10–4–708 is established when an insurer acts without justification and in disregard of plaintiff's rights. *Tam v. Shelter Mutual Insurance Co.*, 786 P.2d 501 (Colo.App.1989), *rev'd on other grounds*, 811 P.2d 388 (Colo.1991); *see Wilson v. State Farm Mutual Automobile Insurance Co.*, 934 F.2d 261 (10th Cir. 1991).

■ Here, the evidence at trial established the existence of an industry standard customarily followed by defendant when conducting an investigation regarding the reasonableness and necessity of a plaintiff's treatment.

Plaintiff's industry expert testified that it is reasonable for an insurer to assume that the insured and her treating doctors consider medical treatments to be reasonable and necessary, but that such an assumption does not substitute for a reasonable investigation, which requires consultations with these individuals regarding the reasonableness and necessity of treatments.

Defendant's adjuster also testified that defendant customarily solicits and considers information from the attending physician as part of a reasonable investigation, including diagnosis, prognosis, and treatment plans, as an aid in making its determination regarding the reasonableness and necessity of treatment. Notwithstanding these standards, it is undisputed that defendant neglected to solicit an authorized physician's report from the osteopath before his bills were denied and that it denied

benefits before considering the report which he authored.

Therefore, viewing the evidence in the light most favorable to plaintiff, we conclude that sufficient evidence existed to support plaintiff's claims that defendant acted willfully, wantonly, and unreasonably when it deviated from its customary investigation procedures by failing to solicit and consider information from the osteopath. Under these circumstances, the trial court properly submitted plaintiff's claims to the jury. *See Brewer v. American & Foreign Insurance Co.*, 837 P.2d 236 (Colo.App. 1992).

## II.

Defendant also urges us to find reversible error based on the jury instructions. We decline to do so.

## A.

The trial court gave to the jury an instruction which incorporates within the definition of "unreasonable conduct" an insurer's alleged failure to investigate. Defendant contends that there is no evidence to support such an instruction. However, our holding above is dispositive of this contention.

## B.

Defendant also contends the trial court erred in rejecting defendant's requested instructions setting forth its theory concerning its latitude to investigate and challenge certain claims.

■ The form of instructions given at trial is a matter within the discretion of the trial court. So long as the jury is adequately instructed on the law, the trial court does not abuse its discretion when refusing instructions even though they may be correct in legal effect. *See States v. R.D. Werner Co., Inc.*, 799 P.2d 427 (Colo.App.1990).

In this case, a review of the instructions as a whole establishes that the jury was adequately informed of the legal standards underlying the determination of an in-

sured's reasonableness in the context of conducting an investigation. Therefore, the trial court did not abuse its discretion by rejecting defendant's requested instructions.

### C.

Defendant further maintains that the trial court erroneously instructed the jury that it may award actual damages for non-economic losses incurred as a result of emotional distress without requiring a showing of plaintiff's substantial property or economic loss caused by defendant's conduct.

■ We must view the instructions regarding the recovery of damages for emotional distress incurred as a result of defendant's bad faith as a whole to determine whether the deficiency in one instruction is cured by another. *See Southerland v. Argonaut Insurance Co.*, 794 P.2d 1102 (Colo.App.1990).

■ The instruction challenged here is a standard jury instruction which sets forth the economic and noneconomic losses which are recoverable in a bad faith claim as actual damages. While this instruction does not contain the required standard concerning plaintiff's substantial property or economic loss, *see Farmers Group, Inc. v. Trimble*, 768 P.2d 1243 (Colo.App.1988), this standard is included in another instruction. Under these circumstances, the jury was properly instructed. *See Southerland v. Argonaut Insurance Co., supra.* And, contrary to defendant's contention, plaintiff introduced evidence of substantial property and economic loss associated with her small business operation.

### III.

It is uncontested that defendant paid insurance benefits for the osteopath's submitted billings before plaintiff commenced this action. Therefore, defendant contends that the trial court erroneously submitted the statutory breach of contract claim to the jury. It maintains that an insurer's late payment of benefits is not a proper predicate for a claim under § 10–4–708, and

contends the court also erred by awarding attorney fees and prejudgment interest on the recovered damages. It likewise contends that the trial court erred by submitting plaintiff's statutory willful and wanton claim for treble damages and by awarding prejudgment interest thereon.

■ We agree that a statutory claim to recover paid benefits should not have been submitted under these circumstances and, therefore, that the concomitant attorney fees and statutory prejudgment interest awarded on the benefits in controversy must be vacated. Nevertheless, we conclude that the trial court properly submitted plaintiff's willful and wanton claim to the jury and awarded prejudgment interest on the trebled award.

Section 10–4–708 requires insurers to reimburse claimants for expenses incurred because of an automobile accident within thirty days of receipt of reasonable proof that the expenses were in fact incurred. Section 10–4–708(1), C.R.S. (1991 Cum. Supp.) provides:

> *In the event that the insurer fails to pay such benefits when due, the person entitled to such benefits may bring an action in contract to recover the same.* In the event the insurer is required by such action to pay any overdue benefits, the insurer shall, in addition to the benefits paid, be required to pay the reasonable attorney fees incurred by the other party. The insurer shall pay interest on the benefits which were in controversy at a rate of eighteen percent per annum, with interest commencing from the date the benefits in controversy were due. *In addition, in the event of willful and wanton failure of the insurer to pay such benefits when due, the insurer shall pay to the other party,* in addition to the other amounts due to the other party under this subsection (1), *an amount which is three times the amount of unpaid benefits in controversy in the action.* (emphasis supplied)

■ This statute is to be liberally construed to further its remedial and beneficent purpose "to avoid inadequate compen-

sation to victims of automobile accidents," a purpose construed to embody a legislative intent and policy to maximize insurance coverage. Moreover, we must give effect to this statute according to its plain and obvious meaning. *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984); *Leland v. Travelers Indemnity Co.*, 712 P.2d 1060 (Colo. App.1985).

Our analysis of this statute leads us to conclude that, while the language employed in this provision mandates the prompt and timely payment of insurance benefits, it provides two separate remedies arising from an insurer's failure to pay within the statutorily-prescribed time period.

The first remedy redresses an insurer's refusal and failure to pay benefits before the commencement of a lawsuit, and it attaches to situations in which the insured is forced to commence an action in contract to recover unpaid benefits. Under these circumstances, the insured must institute a civil action to collect unpaid benefits as a prerequisite to her statutory right to recover unpaid benefits, reasonable attorney fees, and prejudgment interest.

The second remedy awards treble damages for an insurer's willful and wanton failure to pay benefits in a timely manner. While this remedy supplements the insured's statutory right to recover unpaid benefits, it also clearly and unequivocally includes situations in which the insurer pays benefits in an untimely manner, including payment before the institution of a lawsuit. Hence, we hold that a statutory willful and wanton breach of contract claim properly lies in situations in which the insurer pays benefits in controversy when overdue.

Here, although defendant did pay plaintiff's claim for osteopathic treatments before the commencement of this action, it nevertheless failed to reimburse her in accordance with the Act. Therefore, because defendant violated plaintiff's statutory right to have her bills paid within thirty days, the trial court properly submitted plaintiff's willful and wanton claim to the jury for its determination.

However, defendant's payment of disputed benefits prior to this action divests plaintiff of her entitlement to recover damages, attorney fees, and interest on her statutory breach of contract claim. Under these circumstances, the trial court committed error by submitting this claim to the jury, and its order awarding prejudgment interest and attorney fees thereon must be vacated.

## IV.

We next turn to the contentions of error on appeal and on cross-appeal which are directed to the treble damages award rendered on defendant's willful and wanton breach of § 10–4–708.

### A.

Defendant challenges the jury verdict which awarded plaintiff $38,000 for defendant's willful and wanton failure to pay benefits in a timely manner. It contends that the jury's blatant disregard of the jury instructions evinces prejudice and bias, entitling it to a new trial. In the alternative, it contends that the trial court's amendment of the verdict to reduce the award to treble the amount of actual damages constitutes reversible error. We disagree.

The trial court's written order denying defendant's motion for a new trial subsumes an implicit finding that the jury did not act with passion, bias, or prejudice, *see Schmidt v. Frankewich*, 819 P.2d 1074 (Colo.App.1991), and the record does not support a contrary conclusion.

When such jury misconduct is not present, a trial court may generally either grant a new trial pursuant to C.R.C.P. 59 based upon excessive damages or deny the new trial, provided the plaintiff agrees to remit the amount of damages found by the court to be excessive. *Marks v. District Court*, 643 P.2d 741 (Colo.1982).

However, a jury verdict may also be amended as to form, based upon the instructions given to the jury, to correct a technical error which does not affect the

underlying determination of the jury. *Weeks v. Churchill*, 44 Colo.App. 520, 615 P.2d 74 (1980); *see Boulder Valley School District R-2 v. Price*, 805 P.2d 1085 (Colo. 1991).

■ Here, the jury was instructed that it could award actual damages in favor of plaintiff on this claim in an amount "representing the cost of the reasonable and necessary health care treatment incurred ... which have not been paid or which have not been paid in a timely manner." The jury also received the text of § 10–4–708 as an instruction, which provides that the insured "shall" pay treble damages if such damages are attended by willful and wanton conduct.

The jury found that plaintiff incurred $219 in actual damages and that defendant acted willfully and wantonly when making untimely payments of benefits. Therefore, the jury's underlying determination regarding defendant's liability for willful and wanton conduct is clearly established by its findings, necessitating the mandatory entry of a treble damages award. Under these circumstances, the trial court properly amended a technical error in the verdict to reflect the proper amount of damages without affecting the jury's underlying decisions. *See Weeks v. Churchill, supra.*

### B.

Plaintiff contends on cross-appeal that the trial court erred by reducing the statutory damages award. She argues that the statutory language "unpaid benefits in controversy" should be construed to permit recovery of three times the amount of all medical expenses not incurred owing to the insurer's wrongful refusal to continue paying for plaintiff's treatment. We reject this construction.

■ A statute must be construed in light of the apparent legislative intent and purpose. *Mooney v. Kuiper*, 194 Colo. 477, 573 P.2d 538 (1978). To discern such intent, we must first look to the statute's plain language and give it effect in a sensible and reasonable construction. *People v. District Court*, 713 P.2d 918 (Colo.1986).

■ We hold that the plain language of § 10–4–708 expressly contemplates that insurers shall be liable for payment of those reasonable and necessary medical expenses actually incurred and submitted as a result of an automobile accident.

Our conclusion is buttressed by our supreme court's recognition of an insured's independent right to bring a common law action in tort for an insurer's bad faith refusal to pay benefits, *Farmers Group v. Williams, supra*, the remedy for which is recovery for injuries incurred as a result of the insurer's failure to act in good faith. *See Farmers Group v. Trimble, supra.*

Therefore, so long as the insured does not receive a double recovery for the same conduct, she is entitled to bring claims in contract to recover damages for benefits incurred but not paid pursuant to § 10–4–708, and in tort to recover damages for losses sustained as a result of the insurer's refusal to pay benefits for medical expenses which would have been incurred but for the insurer's wrongful conduct. *See Lexton–Ancira Real Estate Fund v. Heller*, 826 P.2d 819 (Colo.1992); *Farmers Group, Inc. v. Williams, supra.*

Accordingly, we conclude that the trial court properly reduced the damages award to comport with the General Assembly's intent as evinced by the plain language of the statute.

### C.

Defendant contends that plaintiff's cross-appeal is frivolous and groundless, entitling it to an award of attorney fees pursuant to § 13–17–101, et seq., C.R.S. (1987 Repl.Vol. 6A). However, in light of the absence of authority construing § 10–4–708, we deny defendant's request. *See Farmers Group, Inc. v. Trimble, supra.*

### V.

Finally, defendant argues that the trial court erroneously assessed prejudgment interest on the punitive damages award on plaintiff's claim of bad faith. We agree.

Pursuant to § 13–21–101, C.R.S. (1987 Repl.Vol. 6A), prejudgment interest cannot be awarded on punitive damages *Seaward Construction Co. v. Bradley*, 817 P.2d 971 (Colo.1991); *Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6 (Colo.App.1986). Accordingly, this award must be reversed.

The judgment is affirmed except for the award of prejudgment interest on the bad faith punitive damages award and the award of attorney fees and prejudgment interest on the no-fault breach of contract claim. As to these assessments, the judgment is reversed. The cause is remanded to the trial court for entry of judgment consistent with the views expressed in this opinion.

PIERCE and REED, JJ., concur.